**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

VIVEK SHAH,
Plaintiff,

v.

TALENTBRIDGE, INC.,

Defendant.

Case No.: 2:26-cv-00222-AH-SSC

JURY DEMANDED

**FIRST AMENDED COMPLAINT**

**INTRODUCTION**

1. This action arises from Defendant TalentBridge, Inc.'s operation of a candidate-facing job-search website that allowed third parties to read, learn, and acquire the contents and meaning of Plaintiff's search communications while those communications were being transmitted through Defendant's website, without Plaintiff's prior consent and despite Plaintiff's affirmative selection of the website's "Reject All" cookie option.

2. Plaintiff used Defendant's website for the bona fide purpose of searching for employment opportunities for himself in or near Los Angeles, California. In doing so, Plaintiff entered search terms concerning criminal-history-related job

restrictions, including search terms similar to "felony-friendly jobs" and "jobs no background check," and used Defendant's city filter to select Los Angeles.

3. Those search communications conveyed private, nonpublic, and stigmatizing information about Plaintiff's employment-related circumstances, concerns, interests, and constraints. The communications were intended for Defendant's search tool so that Defendant could return relevant job postings. Plaintiff did not intend to disclose those communications to unrelated third parties such as analytics vendors, accessibility-technology vendors, advertisers, or tracking services.

4. Before submitting his searches, Plaintiff was shown a cookie banner that offered, among other choices, "Customise," "Reject All," and "Accept All." Plaintiff selected "Reject All." Plaintiff reasonably understood that selection to mean that non-essential third-party tracking, analytics, or similar third-party collection would not occur absent further consent.

5. Despite Plaintiff's rejection of non-essential tracking, Defendant caused Plaintiff's search-bearing page location, including the jobs page URL containing the "_search=" parameter, to be transmitted in outbound cross-origin requests to third-party services, including Google Analytics and UserWay-associated infrastructure. Those third-party requests occurred contemporaneously with Plaintiff's search interaction and results-page generation.

6. Through those transmissions, unrelated third parties actually acquired the contents and meaning of Plaintiff's search communications, together with contextual data such as the page viewed, time of interaction, browser/session information, and other log or analytics information sufficient to associate the disclosed search with Plaintiff's browser, session, device, or digital profile.

7. As a result, Plaintiff suffered a concrete and particularized privacy injury, including the nonconsensual disclosure of the contents of his sensitive job-search communications to third parties, loss of control over information concerning his private digital activity and job-search profile, and exposure to third-party collection, retention, analysis, and potential profiling based on stigmatizing employment-related searches.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a), provided the jurisdictional allegations below are established, because Plaintiff is a citizen of California, Defendant is a citizen of a different state or states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Plaintiff is a natural person, a citizen of California and of the United States, and is domiciled in Los Angeles County, California. Plaintiff resides in California, intends to remain in California, and was physically located in California when the communications at issue were sent and intercepted.

10. Defendant TalentBridge, Inc. is a corporation incorporated under the laws of Delaware, with its principal place of business located at 6100 Fairview Road, Suite 500, Charlotte, NC 28210. Defendant conducts business nationwide, including in California, through an interactive website directed to job seekers and employers and used by California residents, including Plaintiff.

11. The amount in controversy exceeds $75,000 because Plaintiff alleges multiple separate violations of California Penal Code § 631(a), and each completed violation supports statutory damages of $5,000 under California Penal Code § 637.2. Plaintiff made multiple search submissions during the relevant period, each of which triggered one or more separate third-party acquisitions of the search-bearing communication. The exact number of affected search submissions, network calls, recipient third parties, and discrete acquisitions is within Defendant's possession, custody, and control, but based on the requests observed and the architecture of the page, Plaintiff plausibly alleges that the aggregate statutory exposure exceeds $75,000.

12. This Court has personal jurisdiction over Defendant because Defendant purposefully directed its conduct toward California by operating an interactive, publicly accessible website that solicited and processed job-search communications from California residents, including Plaintiff, and by causing the interception and disclosure of communications originating from California.

13. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District, including Plaintiff's use of Defendant's website from within this District and the resulting interceptions and disclosures of Plaintiff's communications.

## PARTIES

14. Plaintiff Vivek Shah is, and at all relevant times was, an individual domiciled in Los Angeles County, California.

15. Defendant TalentBridge, Inc. owns, operates, controls, maintains, or causes the operation of talentbridge.com and the candidate-facing jobs pages and search tools at issue in this action.

## FACTUAL ALLEGATIONS

### A. Defendant's Candidate-Facing Job Search Website

16. Defendant markets itself as a staffing and recruiting company and operates a candidate-facing website at talentbridge.com through which job seekers may search for open positions.

17. Defendant's website includes a "Find Jobs" or equivalent jobs-board function that invites candidates to search available job postings using a text-entry search bar and multiple filters.

18. The job-search interface includes, among other things, a free-text search field, a city dropdown, a state dropdown, and additional filters such as category, job type, onsite flexibility, and pay rate.

19. During the relevant period, Plaintiff was able to select "Los Angeles" from Defendant's city dropdown while performing the searches at issue.

20. Defendant's search interface was designed to solicit from users the contents of what they were looking for in employment, where they wanted to work, and what conditions, restrictions, or preferences defined their search.

21. Defendant's publicly posted terms state that the website uses Google Analytics and that log data associated with use of the website may include Internet Protocol address, browser type, browser version, pages visited, time and date of visit, time spent on those pages, and other statistics.

22. Defendant's publicly posted accessibility materials state that the website uses UserWay technology, including an accessibility scanner or widget, confirming that UserWay-related code or services were deployed on the site.

**B. Plaintiff's Bona Fide Job Search Purpose**

23. Plaintiff visited Defendant's website for the genuine purpose of searching for employment opportunities for himself, including opportunities in or near Los Angeles, California.

24. Plaintiff did not visit the site merely to manufacture a lawsuit. Plaintiff used the website as an ordinary job seeker would use it: by entering search terms and selecting location filters to obtain matching job results.

25. Plaintiff entered search terms similar to "felony-friendly jobs near Los Angeles and "jobs no background check" near Los Angeles.

26. Plaintiff also selected Los Angeles from Defendant's city dropdown so that the search would focus on positions in or near Los Angeles.

27. Plaintiff's search terms, taken together with the selected city filter, communicated that Plaintiff was seeking employment opportunities in the Los Angeles area that either would not screen out an applicant based on felony history or would not require a background check, or at minimum that Plaintiff was concerned with criminal-history-related screening barriers in connection with his own job search.

28. Those communications were private and sensitive. They conveyed stigmatizing, nonpublic information regarding Plaintiff's employment concerns, including concern that conventional job searches or employers might exclude him or treat him adversely because of actual or perceived criminal-history-related issues.

29. A reasonable person would understand that a search for "felony-friendly jobs" or "jobs no background check" is materially different from an ordinary

search for a job title, pay range, or location. Such a search reveals a private concern about criminal-history screening and exposes the searcher to stigma, embarrassment, reputational harm, and unfair profiling if disclosed to unrelated third parties.

30. Plaintiff intended those search communications only for Defendant and only for the purpose of obtaining responsive job listings. Plaintiff did not authorize Defendant to disclose the contents or meaning of those communications to third parties.

**C. Defendant's Cookie Banner and Plaintiff's Rejection of Tracking**

31. Before submitting the searches at issue, Plaintiff encountered Defendant's cookie banner.

32. The banner represented that cookies would be used to enhance browsing experience, serve personalized ads or content, and analyze traffic, and it offered three options: "Customise," "Reject All," and "Accept All."

33. Plaintiff affirmatively selected "Reject All" before conducting the relevant searches.

34. Plaintiff reasonably understood "Reject All" to mean that Defendant would not permit non-essential third-party tracking, analytics collection, advertising-related collection, or similar third-party acquisition of his search activity absent further express consent.

35. Defendant did not clearly and conspicuously disclose, before Plaintiff searched, that the contents of Plaintiff's job-search communications, or page-location data revealing those communications, would nevertheless be sent to Google Analytics, UserWay, or other unrelated third parties after Plaintiff clicked "Reject All."

36. Defendant did not obtain Plaintiff's prior consent to allow unrelated third parties to read, learn, or acquire the contents or meaning of his searches.

37. Plaintiff therefore had a reasonable expectation that his search terms would be processed by Defendant's own search tool for the sole purpose of returning job results, not simultaneously disclosed to third parties outside the communication.

**D. How Defendant's Search Terms Were Exposed Through the Page URL and Transmitted to Third Parties**

38. Defendant's job-search architecture placed the user's search term into the live jobs-page URL through a "_search=" parameter or a materially similar search parameter.

39. Because the search term was embedded in the page location itself, third-party code or services present on the page could access, receive, or be sent the page location containing the exact search term.

40. After Plaintiff submitted a search query, Defendant's website loaded a jobs results page that reflected the entered search in the browser's address bar and page state.

41. Using ordinary browser developer tools, Plaintiff observed outbound network requests occurring contemporaneously with the search interaction.

42. Plaintiff observed a cross-origin request to Google Analytics at analytics.google.com/g/collect or a materially similar Google Analytics collection endpoint.

43. Plaintiff observed that the Google Analytics request included the TalentBridge jobs page location containing the "_search=" parameter and thus disclosed the exact search term embedded in the URL.

44. Plaintiff also observed a cross-origin request to UserWay-associated infrastructure, including a request to a UserWay-related endpoint such as cdn77.api.userway.org or a materially similar UserWay endpoint.

45. Plaintiff observed that the UserWay-related request likewise included the TalentBridge jobs page location containing the "_search=" parameter and thus disclosed the exact search term embedded in the URL.

46. These requests were made from Plaintiff's browser to third-party domains outside Defendant's own domain, confirming that the search-bearing

communication was sent to unrelated third parties rather than remaining solely within Defendant's internal systems.

47. The Google Analytics request and the UserWay-related request were separate outbound communications to separate third-party services.

48. The requests occurred as part of the live page-load and job-search process, while Plaintiff's search communication was being transmitted through Defendant's page architecture and before the communication had become exclusively confined to Defendant and Plaintiff alone.

49. Defendant's own design choices caused this to occur. Defendant chose to embed third-party services on the page, chose to place the user's search term into the live page URL or equivalent page-state data, and chose to permit the search-bearing page location to be transmitted to those third parties during the search session.

50. Plaintiff captured representative screenshots of the page, the cookie banner, and the relevant outbound requests. Those screenshots show the page architecture, the existence of the "Reject All" option, and the third-party transmissions.

51. To the extent the representative screenshots used a confirmatory control term rather than Plaintiff's private felony-related searches, the screenshots still depict the same page architecture, the same "_search=" mechanism, and the same

third-party transmission pathway that applied to Plaintiff's criminal-history-related searches.

52. On information and belief, each time Plaintiff submitted one of the criminal-history-related searches, Defendant's website disclosed the search-bearing page location, or equivalent page-state data revealing the search contents, through the same third-party request structure.

**E. Google Analytics and UserWay Were Third Parties With Independent Ability To Use the Data**

53. Google Analytics is a third-party analytics service and is not TalentBridge itself.

54. Defendant's own public statements indicate that Google Analytics may collect and analyze information such as IP address, browser information, pages visited, time and date of visits, time spent, and other statistics concerning site use.

55. UserWay is likewise a third-party service provider and is not TalentBridge itself.

56. Defendant's own public statements indicate that UserWay technology is deployed on the site in connection with accessibility scanning or related functions.

57. Because Google Analytics and UserWay are independent third parties operating services for multiple customers and purposes, each had the independent technical ability to receive, store, analyze, process, and use records of Plaintiff's

search-bearing page view and related contextual data, rather than functioning as a mere extension of Plaintiff or as a passive cable for communication.

58. On information and belief, the requests to Google Analytics and UserWay were accompanied by or associated with contextual information sufficient to tie the disclosed search-bearing page location to Plaintiff's browser, device, session, timestamp, referrer, page view, or other digital profile data.

59. On information and belief, the search-bearing disclosures therefore enabled Google Analytics, UserWay, or both to learn not only that someone visited the TalentBridge jobs page, but also the specific contents and meaning of Plaintiff's search communication and the context in which it was made.

**F. Concrete Harm and Article III Injury**

60. Plaintiff suffered an actual and completed privacy injury because unrelated third parties actually acquired the contents and meaning of his private search communications.

61. Plaintiff's injury is not a bare statutory violation. It is the completed nonconsensual disclosure of sensitive job-search communications to unrelated third parties, despite Plaintiff's rejection of non-essential tracking.

62. The disclosed searches conveyed stigmatizing, nonpublic information concerning Plaintiff's efforts to locate jobs that would not exclude him because of actual or perceived criminal-history-related barriers. Disclosure of such

information is highly offensive to a reasonable person and closely analogous to the common-law harms of disclosure of private information and intrusion upon seclusion.

63. Plaintiff also suffered loss of control over private information concerning his digital activity, job-search activity, and employment-related profile because Defendant caused that information to be placed in the hands of unrelated third parties capable of recording, retaining, analyzing, and exploiting it.

64. The disclosure exposed Plaintiff to the risk and reality of profiling, segmentation, and adverse inference based on stigmatizing employment-related searches, including inferences that Plaintiff had a criminal record, feared a background check, or needed second-chance employment opportunities.

65. Plaintiff changed his position in reliance on Defendant's consent interface. By selecting "Reject All," Plaintiff sought to avoid non-essential third-party disclosure. Plaintiff would not have submitted the same searches in the same form, or would have used different means to search for employment, had Defendant disclosed that those communications would still be sent to third parties.

66. Plaintiff experienced concern, embarrassment, frustration, and invasion of privacy upon learning that his felony-related job-search communications had been transmitted to unrelated third parties despite his explicit rejection of such tracking.

67. Plaintiff's injuries are concrete, particularized, actual, and personal to him. They were caused by Defendant's challenged conduct and are redressable through statutory damages, injunctive relief, declaratory relief, and any other relief this Court deems proper.

68. Plaintiff also faces a real and immediate threat of repeated injury because he remains interested in using online job-search tools, including Defendant's site, for genuine employment-search purposes, but is presently deterred from using Defendant's search function absent judicial relief because he cannot do so without risking further disclosure of sensitive search communications.

### G. Additional Facts Addressing Issues Raised in Defendant's Motion to Dismiss

69. Defendant argued that Plaintiff failed to identify the search terms at issue. Plaintiff specifically alleges that he entered search terms similar to "felony-friendly jobs" and "jobs no background check," together with the Los Angeles city filter.

70. Defendant argued that Plaintiff failed to identify the third party or parties involved. Plaintiff specifically identifies Google Analytics and UserWay-associated infrastructure as third-party recipients observed receiving the search-bearing page location through outbound requests from Plaintiff's browser.

71. Defendant argued that the complaint did not plausibly show interception while the communication was in transit. Plaintiff alleges that the third-party requests occurred contemporaneously with the search interaction and page-load process, as Defendant's page architecture converted the search term into a live page location and transmitted that location outward to third parties before the communication had become exclusively confined between Plaintiff and Defendant.

72. Defendant argued that Plaintiff alleged only a statutory injury. Plaintiff specifically alleges an actual disclosure-based privacy injury, loss of control over private digital-activity information, profiling-related harm, deterrence from future use, and emotional and dignitary harm caused by the completed nonconsensual disclosure of sensitive job-search communications.

73. Defendant argued that Plaintiff was merely a tester or lacked a genuine purpose. Plaintiff specifically alleges that he used the site for a bona fide personal employment-search purpose and entered genuine searches reflecting the type of jobs he was seeking.

74. Defendant argued that Plaintiff failed to identify any content the third parties could independently use. Plaintiff specifically alleges that the disclosed search-bearing page location revealed the exact search contents and that those contents were transmitted with contextual information such as page view, time of

interaction, browser/session information, and other log or analytics data capable of association with a browser or digital profile.

75. Defendant argued that the complaint failed to plead consent facts adequately. Plaintiff specifically alleges that he selected "Reject All" before conducting the relevant searches and did not consent to the third-party acquisitions that followed.

## COUNTS ONE THROUGH SIXTEEN

### Violation of California Penal Code § 631(a)

76. Plaintiff realleges and incorporates by reference paragraphs 1 through 75 as though fully set forth herein.

77. California Penal Code § 631(a) prohibits, among other things, reading or attempting to read or learn the contents or meaning of any communication while the communication is in transit or passing over any wire, line, or cable, and prohibits aiding, agreeing with, employing, or conspiring with any person to do so, without the consent of all parties to the communication.

78. Plaintiff's search text, selected location filter, search-bearing page location, and related query data constituted communications and the contents or meaning of communications within the meaning of § 631(a).

79. Google Analytics and UserWay were third parties to Plaintiff's communications with Defendant.

80. By embedding, deploying, authorizing, and using third-party code and services on the jobs page, and by structuring the page so that Plaintiff's search term was embedded in the live page location and transmitted to third-party endpoints during the search interaction, Defendant intentionally aided, agreed with, employed, and/or conspired with those third parties to read, learn, and acquire the contents and meaning of Plaintiff's communications while those communications were in transit.

81. The third-party acquisitions were unauthorized and occurred without Plaintiff's prior consent.

82. Defendant is liable under the fourth clause of § 631(a) for aiding, agreeing with, employing, or conspiring with a third party to unlawfully read or learn the contents of Plaintiff's communications while in transit.

83. Each separate search submission and each separate third-party acquisition of a search-bearing communication constituted at least one separate violation of § 631(a).

84. As a direct and proximate result of Defendant's conduct, Plaintiff suffered the injuries described above and is entitled to statutory damages, injunctive relief, declaratory relief, and all other relief available under law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For statutory damages of $5,000 per violation pursuant to California Penal Code § 637.2;

B. For preliminary and permanent injunctive relief prohibiting Defendant from transmitting or causing the transmission of users' search communications, including search-bearing URLs or equivalent page-state data, to third parties without clear prior notice and valid prior consent;

C. For public and private injunctive relief requiring Defendant to disable, reconfigure, or sanitize third-party code and services so that the contents of users' search communications are not disclosed to third parties absent valid prior consent;

D. For declaratory relief that Defendant's conduct violated California Penal Code § 631(a);

E. For costs of suit and any further relief allowed by law; and

F. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 6, 2026

/s/ Vivek Shah

Vivek Shah
1301 N Broadway Ste 32167
Los Angeles, CA 90012
newvivekshah@gmail.com
(224) 246-2874