ELIZABETH A. SPERLING (SBN 231474)
esperling@glaserweil.com
SARAH G. MILLER (SBN 281751)
smiller@glaserweil.com
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP
600 W. Broadway, Suite 2850
San Diego, CA 92101
Phone: (619) 765-4380
Fax: (619) 483-0646

Attorneys for Defendant
TalentBridge, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VIVEK SHAH,<br><br>Plaintiff,<br><br>v.<br><br>TALENTBRIDGE, INC.,<br><br>Defendant. | CASE NO.: 2:26-cv-00222-AH(SSCx)<br>Hon. Anne Hwang, District Judge<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(1) AND RULE 12(b)(6)**<br><br>[Filed concurrently with Notice of Motion and Motion; Declaration of Sarah G. Miller; Request for Judicial Notice; [Proposed] Order Granting Motion to Dismiss; [Proposed] Order Granting Request for Judicial Notice]<br><br>DATE: May 27, 2026<br>TIME: 1:30 p.m.<br>CTRM: Ctrm 9C<br><br>Case Filed: January 5, 2026 |

# TABLE OF CONTENTS


Page

**I.** INTRODUCTION .......... 1

**II.** STATEMENT OF FACTS .......... 3

**III.** LEGAL STANDARD .......... 4

- **A.** Rule 12(b)(1) Motion to Dismiss .......... 4
- **B.** Rule 12(b)(6) Motion to Dismiss .......... 5

**IV.** THE COURT LACKS SUBJECT MATTER JURISDICTION .......... 5

- **A.** Plaintiff Fails To Allege Diversity Jurisdiction .......... 5
- **B.** Plaintiff Fails to Allege Article III Injury-in-Fact .......... 7

**V.** DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS SHOULD BE GRANTED .......... 12

- **A.** The FAC Fails to Allege Any Invasion of A Protected Privacy Interest .......... 14
- **B.** Plaintiff Fails to Plead That Any Third Party Read, Attempted to Read, or Learned A Protected Communication While In Transit .......... 15
- **C.** Plaintiff Fails to Allege the Presence Of A Third Party Eavesdropper .......... 17
- **D.** There Is No Violation of the Fourth Clause Because There Is No Violation of Another Clause .......... 20

**VI.** CONCLUSION .......... 20


Glaser Weil

# TABLE OF AUTHORITIES

Page

**CASES**

*Armstrong v. Allied Ins. Co.*,
No. 14-cv-0424-JGB, 2014 WL 12591844 (C.D. Cal. Aug. 19, 2014)............ 11, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................ 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................ 5

*Bender v. Williamsport Area Sch. Dist.*,
475 U.S. 534 (1986)........................................................................................ 5

*Blue Ridge Ins. Co. v. Stanewich*,
142 F.3d 1145 (9th Cir. 1998) ........................................................................ 6

*Bradshaw v. Lowe's Companies, Inc.*,
No. 25-cv-00742-DMS-MMP, 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025)....... 11

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456-SB, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .... 8, 11, 14, 19

*Chandler v. State Farm Mut. Auto. Inc. Co.*,
598 F.3d 1115 (9th Cir. 2010) ........................................................................ 4

*Cody v. Boscov's, Inc.*,
No. 8:22-CV-01434-SSS-KKX, 2024 WL 2228973
(C.D. Cal. May 6, 2024) .................................................................. 13, 17, 18, 19

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........................................................ 13

*Esparza v. Gen Digital Inc.*,
No. CV 23-8223-KK-AGRX, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ..... 13, 20

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......................................... 14, 15, 19

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ................................................ 15, 17

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........................................................ 10

*In re Vizio, Inc., Consumer Privacy Litig.*,
238 F.Supp.3d 1204 (C.D. Cal. 2017) .......................................................... 16

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......................................................... 18



Glaser Weil

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 20

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 15

*Licea v. American Eagle Outfitters*,
659 F.Supp.3d 1072 (C.D. Cal. 2023) .......... 17

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 16

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 12

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) .......... 5

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 10, 11, 14

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .......... 5

*Myers, et al. v. Dick's Sporting Goods, Inc.*,
Case No. 2:25-cv-03241-DJC-CKD, Dkt. 25 (E.D. Cal. Apr. 17, 2026) .......... 11, 12

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 4, 9, 12

*Quigley v. Yelp, Inc.*,
No. 17-CV-03771-RS, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) .......... 16

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-cv-08735-RGK, 2025 WL 1122387 (C.D. Cal. Mar. 14, 2025) .......... 7, 9

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-sv-08735-RGK, 2025 WL 1085787 (C.D. Cal. Cal. Apr 4, 2025) .......... 9

*Rodriguez v. Brushfire Recs.*,
No. 2:25-CV-09797-CAS-PDX, 2025 WL 3692144
(C.D. Cal. Dec. 15, 2025) .......... 10

*Scott v. Breeland*,
792 F.2d 925 (9th Cir. 1986) .......... 5

*Shah v. NYP Holdings, Inc.*,
No. 23-1127, 2024 WL 3825220 (7th Cir. Aug. 15, 2024) .......... 1, 3

*Shah v. Russco57, LLC*,
No. CV 25-12371 PA (MARX), 2026 WL 71868
(C.D. Cal. Jan. 9, 2026) .......... 2, 6, 7

*Spencer v. Kemna*,
523 U.S. 1, 11 (1998) .......... 4

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .... 4, 9

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .... 5

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .... 13, 19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .... 9

*Valenzuela v. Keurig Green Mountain, Inc.*
674 F.Supp.3d 751 (N.D. Cal. 2023) .... 16, 17

*Valenzuela v. Super Bright LEDs Inc.*,
No. EDCV2301148JAKSPX, 2023 WL 8424472
(C.D. Cal. Nov. 27, 2023) .... 15, 16, 20

*W. Mining Council v. Watt*,
643 F.2d 618 (9th Cir. 1981) .... 5

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .... 14, 15

**STATUTES**

28 U.S.C. § 1332 .... 4

Cal. Penal Code § 631 .... 9

Cal. Penal Code § 631(a) .... passim

**RULES**

C.D. Cal. L.R. 8-1 .... 6

Fed. R. Civ. P. 12(b)(1) .... 1, 4, 7

Fed. R. Civ. P. 12(b)(6) .... 2, 5, 12, 14

Fed. R. Civ. P. 8(a)(1) .... 5

**STATE CONSTITUTIONAL PROVISIONS**

U.S. Const. art. III .... passim

Glaser Weil

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff is a convicted felon and serial, vexatious litigant who has targeted scores, if not hundreds, of companies nationwide, with demand letters, lawsuits, and arbitration demands, alleging identical violations of California's Invasion of Privacy Act ("CIPA"), in an attempt to extort settlement funds in exchange for avoiding litigation. Defendant TalentBridge, Inc. ("TalentBridge") is Plaintiff's latest target. Plaintiff's FAC against TalentBridge is one of his many copy-and-paste complaints, alleging a violation of CIPA Section 631(a). It was filed for no purpose other than to extract money from TalentBridge. The FAC lacks merit, fails to establish subject matter jurisdiction, and fails to state a claim. The Court should dismiss the meritless FAC and put an end to Plaintiff's extortionist tactics.

Plaintiff is not a stranger to extortion. In 2012, Plaintiff was sentenced to 87 months in prison followed by three years of supervised release after he attempted to extort significant sums from billionaires and other wealthy individuals by threatening to kill members of their families. *Shah v. NYP Holdings, Inc.*, No. 23-1127, 2024 WL 3825220, at *1 (7th Cir. Aug. 15, 2024); *see also* RJN Exs. 1, 2. Once released, Plaintiff turned to litigation to continue his extortionist tactics, serving and filing numerous demands and complaints for violations of various statutes until ultimately choosing to focus on CIPA violations to target the masses. *See* RJN, Exs. 3-12. The harm is especially pronounced with small businesses like TalentBridge, who can scarcely afford the high price of settlement or protracted litigation.

The Court lacks subject matter jurisdiction over this matter and the case must be dismissed pursuant to Rule 12(b)(1) for at least two reasons:

***First***, Plaintiff fails to plead the jurisdictional threshold amount in controversy. Judge Percy Anderson recently dismissed with prejudice a similar complaint filed by this same Plaintiff against a different company *for these same reasons*. *Shah v. Russco57, LLC*, No. CV 25-12371 PA (MARX), 2026 WL 71868, at *1 (C.D. Cal. Jan.

9, 2026).

***Second***, Plaintiff fails to allege a concrete injury-in-fact sufficient to satisfy Article III standing. Plaintiff is a "tester" plaintiff – a serial plaintiff who visits websites specifically to identify alleged violations of law for purposes of litigation. Thus, he lacked a reasonable expectation of privacy when visiting TalentBridge's website and cannot establish an injury-in-fact. His new allegations in the FAC, aimed at avoiding these admissions, are implausible and fail. Even without his "tester" status, Plaintiff cannot establish an injury sufficient to satisfy Article III because he does not allege that he has a protectible privacy interest in the information he allegedly submitted.

Thus, this Court lacks subject matter jurisdiction, and this case should be dismissed with prejudice.

This case should also be dismissed pursuant to Rule 12(b)(6) because Plaintiff fails to allege facts sufficient to state a claim for relief under Section 631(a) of CIPA. Because TalentBridge cannot be a third party eavesdropper to its own communications, it cannot be subject to direct liability under the first three clauses of Section 631(a) , and any such allegations must be dismissed with prejudice. Moreover, Plaintiff fails to allege a claim against TalentBridge for "aiding and abetting" under the fourth clause of Section 631(a), or any predicate violation of the second clause against a third party, for at least the following reasons:

***First***, Plaintiff fails to plead any invasion of a legally protected privacy interest;

***Second***, Plaintiff fails to allege facts to show that a third party actually "read, attempted to read, or learn[ed]" the contents of any protected communication *while in transit*;

***Third***, Plaintiff fails to allege facts sufficient to show the presence of a third party eavesdropper; and

***Fourth***, Plaintiff cannot state a claim under the fourth clause of Section 631(a) against TalentBridge because he fails to state a claim under the first, second, and third clauses.

For each of these reasons the FAC should be dismissed with prejudice.

## II. STATEMENT OF FACTS

Plaintiff has a history of extortion. In 2012, "[Plaintiff] was arrested by the FBI after he mailed threatening communications with the intent to extort. He had targeted billionaires and other wealthy individuals through threats to kill members of their families. He later was convicted of attempted extortion and sentenced to 87 months in prison." *NYP Holdings*, 2024 WL 3825220, at *1; *see also* RJN, Exs. 1, 2 at ¶ 1 (Shah "plead[] guilty to one count of transmitting a threat in interstate commerce with intent to extort money in violation of 18 U.S.C. § 875(b), and seven counts of mailing threatening communications, in violation of 18 U.S.C. § 876(b). Mr. Shah was sentenced to 87 months of imprisonment, followed by three years of supervised release.").

After he was released from prison, Plaintiff began filing copyright infringement actions. *See NYP Holdings*, 2024 WL 3825220, at *1. He then filed complaints alleging violations of various other statutes and common law claims. *See, e.g.*, RJN Exs. 3-5. Eventually, Plaintiff began to focus on CIPA, filing numerous lawsuits against companies with websites. *See, e.g.*, RJN Exs. 6-10. There is no telling how many additional demands were "settled" by companies preferring to avoid the cost of litigation and simply paying his demands. Plaintiff has admitted in previous filings that he is a "tester" plaintiff, a serial plaintiff who visits websites specifically to find alleged violations to ensure legal compliance, in other words for purposes of litigation. *See, e.g.*, RJN, Ex. 10.

On or about January 5, 2026, after TalentBridge did not accede to Plaintiff's demands, Plaintiff filed this lawsuit, alleging violation of CIPA section 631(a). On or about March 16, 2026, TalentBridge filed a motion to dismiss the Complaint due to its conclusory allegations and failure to state a claim. Rather than oppose the motion, and only after forcing TalentBridge to incur time and expense, on April 6, 2026, Plaintiff filed the FAC.



Glaser Weil

Plaintiff's allegations are still too conclusory and vague to state a claim. He alleges only that he "made multiple search submissions during the relevant period, each of which triggered one or more separate third-party acquisitions of the search bearing communication" but he cannot identify the exact number of "affected search submissions." FAC ¶ 11. He further fails to identify the specific search terms he entered or how he had a protectible privacy interest in them. Nor does he identify any third parties who actually read or learned the contents of his communication while in transit. Nor does he identify any third party who actually used his information for another purpose such that they constitute independent third party eavesdroppers. *See* FAC. This Court lacks subject matter jurisdiction and Plaintiff fails to allege facts sufficient to state a claim for relief.

## III. LEGAL STANDARD

### A. Rule 12(b)(1) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(1), a district court may dismiss an action for lack of subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Inc. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). To invoke the court's diversity requirements, a plaintiff must allege that the parties are completely diverse and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

A plaintiff also must establish the "irreducible constitutional minimum" of standing under Article III of the United States Constitution, which, among other conditions, requires a plaintiff to allege she has "suffered an injury in fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). A statutory violation alone does not confer standing without a showing of concrete, particularized, and actual or imminent harm. *Popa v. Microsoft Corp.*, 153 F.4th 784, 788, 796 (9th Cir. 2025).

When subject matter jurisdiction is challenged, the plaintiff has the burden of establishing jurisdiction and must "clearly . . . allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Spencer v. Kemna*, 523 U.S. 1, 11 (1998). Plaintiff fails to meet his burden.

**B. Rule 12(b)(6) Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. To survive, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556-57). A complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court may not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

To state a claim a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," such that "it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Dismissal is proper where, like here, the complaint either (1) lacks a cognizable legal theory; or (2) fails to allege sufficient facts to support a cognizable legal theory. *Twombly*, 550 U.S. at 555; *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

**IV. THE COURT LACKS SUBJECT MATTER JURISDICTION**

**A. Plaintiff Fails To Allege Diversity Jurisdiction**

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). It is Plaintiff's burden to establish that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

Rule 8(a)(1) requires that "[a] pleading that states a claim for relief must



Glaser Weil

contain…a short and plain statement of the grounds for the court's jurisdiction . . . ." Central District Local Rule 8-1 further requires that "[t]he statutory or other basis for the exercise of jurisdiction by this Court shall be plainly stated in…any document invoking this Court's jurisdiction."

Here, Plaintiff asserts that the Court has diversity jurisdiction over this matter. FAC ¶ 8. However, the FAC fails to allege that the amount in controversy exceeds the jurisdictional threshold of $75,000.

Plaintiff alleges a single claim for relief under Cal Penal Code § 631(a), and seeks a civil penalty of $5,000. FAC. ¶ 76-84, Prayer for Relief. Straining to create federal jurisdiction where none exists Plaintiff alleges that he "made multiple search submissions during the relevant period, each of which triggered one or more separate third-party acquisitions of the search bearing communication." FAC ¶ 11. He further contends that "[t]he exact number of affected search submissions, network calls, recipient third parties, and discrete acquisitions is within Defendant's possession, custody, and control" but he nevertheless asserts in a conclusory manner, untethered to any facts, that it exceeds $75,000. *Id.*

Plaintiff provides no information regarding the number of alleged violations. His conclusory allegations fail to establish that the amount in controversy exceeds $75,000. *Shah*, 2026 WL 71868, at *1 (dismissing case with prejudice because even the thirteen violations alleged by plaintiff at $5,000 in statutory damages each would not exceed $75,000 in statutory damages); *see also Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1148 n.3 (9th Cir. 1998) ("[W]e deem it to be the better practice that [diversity jurisdiction] allegations be supported by prima facie proof.").

In *Shah*, 2026 WL 71868, at *1, Judge Anderson *sua sponte* dismissed an initial and amended complaint filed *by this same Plaintiff* due to similar defective allegations alleging the exact same CIPA claim against a different company, for failure to satisfy this Court's subject matter jurisdiction. The jurisdictional allegations in the initial complaint were identical to those in Plaintiff's initial complaint here. *Compare* Compl.



Glaser Weil

¶¶ 5, 8, 9, 26 & Prayer for Relief *with* RJN Ex. 11 ¶¶ 5, 8, 9, 26 & Prayer. In that case, after the first dismissal, Plaintiff amended his complaint to add more details, but the amended complaint still failed to allege diversity jurisdiction, because even the alleged 13 violations at $5,000 in statutory damages each could not surpass the $75,000 threshold. *Id.* at *1. *That decidedly insufficient amended complaint included much more detail than the FAC here*. *Compare* FAC ¶ 11 *with* RJN, Ex. 12. Here, the FAC here does not even identify the number of alleged violations. FAC ¶ 11. The number of alleged violations is pure speculation and Plaintiff has failed to satisfy the Court's jurisdictional threshold for the amount in controversy.

Plaintiff failed to do so even though he had an opportunity to amend after reviewing TalentBridge's initial Motion, which explained in detail the ways in which Plaintiff's allegations were lacking. Despite his numerous attempts to get it right, in this and other cases, Plaintiff vexatiously continues to recycle the same insufficient complaints, which fail to establish the required amount in controversy. No further leave to amend is warranted given that Plaintiff has had two times to get this right in this case alone, not to mention the numerous other instances in federal court.

The FAC should be dismissed without leave to amend.

### B. <u>Plaintiff Fails to Allege Article III Injury-in-Fact</u>

The FAC should also be dismissed pursuant to Rule 12(b)(1) for failure to allege Article III standing, because (1) a "tester", like Plaintiff, who seeks out privacy violations for the purpose of litigation, cannot claim a reasonable expectation of privacy or an injury-in-fact required for standing; and (2) Plaintiff has failed to allege that he suffered a personal, concrete injury sufficient to establish standing.

***First***, an admitted tester plaintiff, like Plaintiff here, who "seek[s] out invasions of privacy" cannot claim a reasonable expectation of privacy or injury-in-fact required to establish Article III standing when they self-impose alleged injuries resulting from their conduct as a "tester." *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735-RGK, 2025 WL 1122387, at *2 (C.D. Cal. Mar. 14, 2025); *see also Byars v. Sterling*

*Jewelers, Inc.*, No. 5:22-cv-01456-SB, 2023 WL 2996686, at *4 n.4 (C.D. Cal. Apr. 5, 2023) (dismissing privacy claims for lack of standing and noting that tester plaintiff could not be reasonably surprised by the recording of her information).

Although Plaintiff has included new allegations in his FAC contending that he visited TalentBridge's website not for the purpose of manufacturing a lawsuit, ***this is implausible based on judicially-noticeable facts in Plaintiff's initial Complaint and in his pattern and practice with respect to his rampant CIPA litigation.*** It is well-established that Plaintiff is a serial "tester" plaintiff who actively seeks out privacy violations to file lawsuits. Plaintiff admitted in judicially-noticeable complaints that he "works as a 'tester' to ensure that companies abide by the privacy obligations imposed by California law," and that it is "necessary and desirable" for him to bring serial litigation "to enforce and advance consumer protection statutes." RJN, Ex. 10 ¶ 4. He files numerous of these lawsuits regularly against companies with the same copy and paste complaint as his initial complaint in this case. *See, e.g.*, RJN, Exs. 6-11; ECF No. 1. Plaintiff only created new allegations in his FAC in an attempt to avoid dismissal based on TalentBridge's Motion to Dismiss his initial Complaint. But it is *not plausible*, and defies logic, that Plaintiff filed the identical copy-and-paste complaint that he files against numerous other companies while actually searching for a job on TalentBridge's website. Plaintiff visited TalentBridge's website – like he does with all other websites – with the intent and purpose of seeking out a privacy violation in order to file this lawsuit. He sought out and expected the alleged harm for which he now seeks redress. He regularly repeats this pattern. A mere sampling of the cases he has filed in furtherance of this scheme is included in the RJN. Plaintiff has not suffered a concrete injury sufficient for Article III standing.

In a substantially similar situation in *Rodriquez*, the Court held that because the plaintiff was a tester and "fully expected" a privacy violation when visiting the website at issue in order to file a lawsuit, the plaintiff lacked a reasonable expectation of privacy or an injury-in-fact to establish standing to bring her claims under CIPA. The Court



Glaser Weil

dismissed Plaintiff's CIPA Section 631 claim with prejudice. *Rodriguez*, 2025 WL 1122387, *Rodriguez* at *2; *Autotrader.com*, 2025 WL 1085787 at *1.

The same applies here. Plaintiff visited TalentBridge's website with the intent, desire, and expectation to identify and manufacture a privacy violation, as he does with all other companies' websites, as exemplified in the sampling of his identical cases. RJN, Exs. 6-11; ECF No. 1. This is insufficient to establish a concrete injury necessary for Article III standing. *Rodriguez*, 2025 WL 1122387, at *3 ("Plaintiff's injury squarely depends on her expectations, as an invasion of privacy requires a reasonable expectation of privacy to have been violated. And as a tester seeking to file lawsuits for invasions of her privacy, she had no expectation of privacy, and thus, no injury in fact."); *Autotrader.com*, 2025 WL 1085787, at *1 ("a tester that visited and entered information into Defendant's website expecting the information to be accessed, recorded, and disclosed, she cannot claim an injury when her expectations were ultimately met.").

***Second***, even without his tester status, Plaintiff still fails to allege a concrete injury and lacks standing to sue. Plaintiff initially alleged that he was injured by "the invasion of his statutory privacy rights" and contended nothing else is required. Compl. ¶ 26. Plaintiff is incorrect. "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis added).

In evaluating standing to sue for statutory violations, courts must "assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa*, 153 F.4th at 791. "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion*, 594 U.S. at 414. A statutory privacy violation relates to the common law privacy tort of intrusion upon seclusion. *Rodriguez v. Brushfire Recs.*, No. 2:25-CV-



Glaser Weil

09797-CAS-PDX, 2025 WL 3692144, at *6 (C.D. Cal. Dec. 15, 2025). But even "a conclusory allegation that defendant has intruded upon [Plaintiff's] seclusion would not be enough to establish standing. Plaintiff must adequately allege harm from the statutory violations that is analogous to the of [sic] the common law tort of intrusion upon seclusion." *Id.*

Here, Plaintiff fails to establish that he has a protectible privacy interest in the information he allegedly submitted on TalentBridge's website. All he alleges is that he entered terms "similar to" "felony friendly jobs" and "jobs no background check together with the Los Angeles city filter." FAC ¶ 69. He cannot even identify what terms he actually entered. Thus, he cannot establish that he has a protectible privacy interest in such information. *See Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) ("Plaintiff's conclusory allegation that she disclosed 'personal information' does not allow the Court to determine whether Plaintiff has a protectable privacy interest in that information…Plaintiff's allegation is insufficient to allege a concrete harm that is required for Article III standing.").

Even if Plaintiff had alleged that he disclosed his basic contact information – which he did not – "courts have found [even] that type of information does not bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.*; *see also I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022) (disclosure of "basic contact information, including one's email address, phone number, or . . . username" inadequate to establish Article III standing).

Even if Plaintiff had alleged that he entered the exact phrases "felony friendly jobs" and "jobs no background check together with the Los Angeles city filter" – which he did not allege – he fails to establish a protectible privacy interest in those phrases. Not only is Plaintiff's criminal background *public* (RJN, Exs. 1, 2), but these are broad, nonidentifying, and nonspecific searches that do not identify Plaintiff, disclose any criminal history, or disclose any sensitive details. At most, they reflect generalized interests, which is insufficient to allege a purported "injury" insufficient for Article III

standing. *See Mikulsky*, 682 F. Supp. 3d at 864; *Byars*, 2023 WL 2996686, at *3 (granting motion to dismiss because "[p]laintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy."); *Armstrong v. Allied Ins. Co.*, No. 14-cv-0424-JGB, 2014 WL 12591844, at *6-7 (C.D. Cal. Aug. 19, 2014) (granting motion to dismiss because the plaintiff did not identify the specific type of personal information that the defendants allegedly accessed).

Indeed, as Plaintiff has not shown an invasion of privacy that would be "highly offensive to a reasonable person," there is no concrete injury sufficient to satisfy Article III standing. *See Myers, et al. v. Dick's Sporting Goods, Inc.*, Case No. 2:25-cv-03241-DJC-CKD, Dkt. 25, at *5 (E.D. Cal. Apr. 17, 2026). Plaintiff did not even identify the specific phrases entered, or anything beyond generalized, anonymous interests. Even if his search terms were paired with the disclosure of purportedly identifying information, like his IP address, which he fails to show, there is no legally protected privacy interest in IP addresses or similar information. *Id.* at *5 ("The disclosure of an IP address is insufficient harm to confer standing unless paired with more sensitive information."); *Bradshaw v. Lowe's Companies, Inc.*, No. 25-cv-00742-DMS-MMP, 2025 WL 3171740, at *5 (S.D. Cal. Nov. 12, 2025) (rejecting standing based on allegations of similar information disclosures and explaining that "Defendants argue there is no reasonable expectation of privacy in one's IP address, and the case law overwhelmingly supports that argument").

Plaintiff tries to explain away discrepancies from his initial Complaint and his FAC by recognizing that the screenshots he took of TalentBridge's website – which he believed he attached to his Complaint but did not – showed a "confirmatory control term rather than Plaintiff's private felony-related searches". FAC ¶ 51. This further confirms that Plaintiff took screenshots of the search terms actually entered, "a confirmatory control term" in which he has no protectible privacy interest. He does not



Glaser Weil

have screenshots of any sensitive personal information that he allegedly entered.

In a decision issued just days ago, in *Myers*, *supra*, Dkt. 25, at *7, the Court considered this exact issue in the context of a Section 631(a) CIPA claim, and determined that the plaintiffs lacked Article III standing because the type of information allegedly submitted on defendants' website was not the type of information that was "highly offensive to a reasonable person" such that it could satisfy Article III standing. The plaintiffs alleged that the defendant's website collected information such as "when a user adds an item to their cart, adds payment information, adds an item to their wish list, customizes a product, submits a form, performs a search, or views content on a particular page" and that "such data is personally identifiable as it is sent alongside a user's IP address and devices are 'identifiable by the combination of a public IP address and device characteristics that are unique in the household.'" *Id.* at *4. The Court held that not only is IP information insufficient to confer standing, but the plaintiffs did not allege the disclosure of any sensitive information, and thus failed to satisfy Article III standing. The Court likened the case to *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), in which the Court held that although the website collected the plaintiff's pet-store preferences and her street address, this harm was insufficiently concrete to confer standing because plaintiff identified "no embarrassing, invasive, or otherwise private information." *Id.* at *6. The same is true here. Plaintiff has not even identified the specific search terms used, but even if he searched more than "a confirmatory control term" (which is implausible, as discussed), these were generalized, nonspecific, and nonidentifiable searches about jobs that were not traceable to Plaintiff and thus could not be highly offensive to a reasonable person.

Plaintiff fails to establish Article III standing, and the FAC should be dismissed. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

## V. **DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS SHOULD BE GRANTED**

This case should also be dismissed for failure to state a claim under Rule 12(b)(6)



Glaser Weil

because it fails to plead the essential elements of Plaintiff's claim for violation of Cal. Penal Code Section 631(a).

Section 631(a) contains four clauses. The first three involve direct liability against a third party eavesdropper. But because TalentBridge cannot eavesdrop on its own conversations, it can *only* be potentially be liable as an "aider and abettor" of the alleged wiretapping under the fourth clause, which imposes liability on anyone who: "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a). Thus, any allegations of direct liability against TalentBridge must be dismissed with prejudice. *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) (dismissing with prejudice any claims of direct liability under section 631(a) against defendant because defendant was a party to the communications at issue and thus could not be directly liable for wiretapping, and amendment would be futile).

To state a claim for violation of the fourth clause against TalentBridge, Plaintiff must allege that a third party directly violated one of the first three clauses. Plaintiff attempts to allege only a violated of the second clause, which prohibits a third party from: "willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[ing], or attempt[ing] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." (FAC ¶ 77.)[1]

---

[1] Plaintiff does not allege a violation of the first clause, nor could he, because Plaintiff does not allege that TalentBridge or any third party tapped a "telegraph or telephone wire, line, cable, or instrument." *See Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1115 (N.D. Cal. 2025); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (collecting cases). Plaintiff also does not allege a violation of the third clause, which involves using or attempting to use, or communicating, the obtained information. FAC ¶ 77. Nor would any such claim survive. *See Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024) ("[T]he third aiding and abetting clause of Section 631(a) requires a violation of the first or second clauses."); *Esparza v. Gen Digital Inc.*, No. CV 23-8223-KK-AGRX, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024).

Plaintiff has failed to allege facts sufficient to state a claim against TalentBridge under the fourth clause of Section 631(a), or any predicate claim against any third party under the second clause, at least because the FAC fails to allege (1) any invasion of a legally protected privacy interest; (2) that a third party "read, attempted to read, or learn[ed]" the contents of any protected communication *while in transit*; (3) the presence of a third party eavesdropper; and (4) because there is no violation of clause one, two, or three, there can be no violation of clause four by TalentBridge.

**A. <u>The FAC Fails to Allege Any Invasion of A Protected Privacy Interest</u>**

Even if Plaintiff could establish Article III standing (he cannot), the FAC separately fails under Rule 12(b)(6) because it does not allege the invasion of any protected privacy interest. As discussed herein, Plaintiff alleges that he searched terms *similar to* "felony-friendly jobs near Los Angeles and "jobs no background check" near Los Angeles – but he does not identify exactly what terms were used, nor is there any protectible privacy interest in such generic terms. See Section III.B. Even if those exact terms were entered by Plaintiff, they do not implicate private or confidential information and fall outside the scope of harms CIPA was designed to address. Courts routinely reject claims based on routine website intersections and generalized user activity that do not involve the disclosure of sensitive personal information. *See, e.g.*, *Mikulsky*, 682 F. Supp. 3d at 864; *Byars*, 2023 WL 2996686, at *3; *Armstrong*, 2014 WL 12591844, at *6-7; *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021).

As to the allegation that, according to the website terms, *i.e.*, the Terms of Service, that the website "may" include Internet Protocol address, and browser information, those same terms actually state that that "[c]ookies . . . include an anonymous unique identifier" such that no identifying information is included. FAC ¶ 21; https://talentbridge.com/terms-of-service/. Nevertheless, Internet Protocol addresses and the like have been held to be routine website interactions with no protectible privacy interest and they are *not protected by CIPA*. *Yoon*, 549 F. Supp. 3d



Glaser Weil

at 1082 ("keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" were routine identifiers and not the type of "content" protected by CIPA, and thus the plaintiff failed to state a claim under the second clause of section 631(a)); *Graham*, 533 F. Supp. 3d at 833 ("IP addresses, locations, browser types, and operating systems [] is not content" protected by CIPA).

The FAC fails to state a claim under Section 631(a) and should be dismissed.

**B. Plaintiff Fails to Plead That Any Third Party Read, Attempted to Read, or Learned A Protected Communication While In Transit**

"[T]o state a claim under CIPA, a plaintiff must allege that the defendant 'read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received.'" *Valenzuela v. Super Bright LEDs Inc.*, No. EDCV2301148JAKSPX, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (emphasis added) (internal citation omitted). The Ninth Circuit has held that, "for communications with a website to be 'intercepted,' they 'must be acquired during transmission, not while [they are] in electronic storage.'" *Id.* (citing *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).)[2] "This is a "narrow definition" limited to "acquisition contemporaneous with transmission." *Id.* (citing *Konop*, 302 F.3d at 878).

"To plausibly allege that Plaintiff's communications were intercepted while in transit, factual allegations regarding the method, or nature, of interception are required." *Heiting*, 728 F.Supp.3d at 1126. "Alleging that the defendant's intercepted a communication in real time is insufficient, without specific facts about what was intercepted and when or how the interception took place." *Super Bright*, 2023 WL

[2] Courts apply *Konop*'s discussion of the Wiretap Act in the context of CIPA and have dismissed CIPA claims when there was no "interception" under the Wiretap Act. *Id.*(citation omitted); *Quigley v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018).

8424472, at *10.

The *most* alleged is that "third-party requests occurred contemporaneously with the search interaction and page-load process, as Defendant's page architecture converted the search term into a live page location and transmitted that location outward to third parties before the communication had become exclusively confined between Plaintiff and Defendant" and that the activity was a "third-party acquisition[]." FAC ¶¶ 71 81. This is insufficient. It does not allege that any third party actually "read, or attempted to read, or learned" the contents of Plaintiff's search queries *while in transit*, or at all. If anything, it alleges that third party *requests* were made as part of TalentBridge's website, and resulted in "third-party acquisitions" but the FAC says nothing about a third party actually reading or learning the contents *of a protected communication while it was in transit*, as is required. *Quigley v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (plaintiff failed to plead unlawful interception of communications where he "does not allege with particularity how or when any defendant became aware of his communications"); *Super Bright*, 2023 WL 8424472, at *10 ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [someone] is intercepting [the plaintiff's] data in transit."); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F.Supp.3d 1204, 1228 (C.D. Cal. 2017) (dismissing CIPA claim where allegation that data collection occurs "in real time").

This fails to state a claim. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) ("[T]he crucial question under § 631(a)'s second clause is whether Mastel has plausibly alleged that Miniclip **read** one of his communications while it was still in transit, i.e., before it reached its intended recipient. [] Because the complaint fails to do so, the court finds that his complaint fails to state a claim against Miniclip under § 631(a)'s second clause."); *Valenzuela v. Keurig Green Mountain, Inc.* 674 F.Supp.3d 751, 754 (N.D. Cal. 2023) (allegation that "code embedded in the chat feature 'allows the [third-party] to secretly intercept in real time, eavesdrop upon, and

store transcripts of Defendant's chat communications with unsuspecting visitors'" were conclusory and insufficient to state a claim); *Heiting*, 728 F.Supp.3d at 1126 (allegations that communication were intercepted in transit and recorded by defendant, and defendant was aware that third party stores chat recordings as they occur, insufficient to satisfy "in transit" requirement, and thus "Plaintiff has failed to state a claim under the second clause of Section 631(a).") *Licea v. American Eagle Outfitters*, 659 F.Supp.3d 1072, 1085 (C.D. Cal. 2023) ("Plaintiff does not allege sufficient facts as to *how* and *when* the third party receives the communications. Plaintiffs must provide more than conclusory allegations that messages were intercepted "during transmission and in real time.") (emphasis added); *Cody v. Boscov's, Inc.*, No. 8:22-CV-01434-SSS-KKX, 2024 WL 2228973, at *3 (C.D. Cal. May 6, 2024) (dismissing section 631(a) claim without leave to amend, and explaining that "to survive motion to dismiss, plaintiff must allege 'how specifically the third-party vendor 'intercepts' communications in transit'").

### C. <u>Plaintiff Fails to Allege the Presence Of A Third Party Eavesdropper</u>

"Section 631 contains an exemption from liability for a person who was a 'party' to a communication." *Keurig*, 674 F. Supp. 3d at 758 (citation omitted). "The party exception must be considered in the technical context of this case." *Id.*

In the initial Complaint, Plaintiff referenced HubSpot, but now has directly contradicted that allegation by alleging that Google Analytics and UserWay are the alleged third party eavesdroppers, based on TalentBridge's reference to those names in its "publicly posted terms" and "accessibility materials." *Compare* Compl. ¶ 13 *with* FAC ¶¶ 21, 22. But while Plaintiff alleges that the Terms of Service and Accessibility Statement indicate that these third parties *are used* on the website (FAC ¶¶ 21, 22), the website's Terms of Service and Accessibility Statement state only that they *may* be used or deployed. *See* https://talentbridge.com/terms-of-service/; https://talentbridge.com/accessibility-statement/. Plaintiff's allegations are speculative and insufficient.

*Even assuming* UserWay or Google Analytics were used in this instance (Plaintiff has failed to show they were), neither are third party eavesdroppers sufficient to state a claim under CIPA. This is because Plaintiff has failed to allege non-conclusory facts showing that either third party had the capability of using or actually used any intercepted query for any purpose other than for TalentBridge. They are extensions of TalentBridge and not third party eavesdroppers.

To determine whether there is a third party eavesdropper, courts consider whether the alleged third party has the "capability to use its record of the interaction for [another] purpose." *Id.* (citing *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023)). "[A] plaintiff [] must have at least pled some **non-conclusory factual allegations** to support the use capabilities of the third-party software company involved." *Id.* (Emphasis added.) Further, "Plaintiff must provide facts suggesting that [third-party vendors] are recording Defendant's customers' information for some use or potential future use beyond simply supplying this information back to Defendant." *Cody*, 658 F.Supp.3d at 782.

Here, Plaintiff fails to plausibly allege non-conclusory facts to support that UserWay or Google Analytics had the capability to or did use information obtained for a purpose other than for supplying this information back to TalentBridge. Plaintiff's allegations are conclusory and insufficient. FAC ¶ 63 (mere passing reference to "third parties capable of recording, retaining, analyzing, and exploiting it"). The only other potentially related allegation is that "Defendant's own public statements indicate that Google Analytics may collect and analyze information such as IP address, browser information, pages visited, time and date of visits, time spent, and other statistics concerning site use." *Id.* ¶ 54. But *potentially* collecting routine web information, which is not content protected by CIPA, is irrelevant, and does not provide the requisite non-conclusory facts to show that either third party has the capability to, or did use, protected information for a purpose other than for TalentBridge. Plaintiff fails to say anything at all about UserWay's alleged capabilities, likely because it is an accessibility

widget that does not use information for any purpose other than for TalentBridge. This is insufficient. *See Graham*, 533 F.Supp.3d at 832 (granting motion to dismiss where "[T]here are no allegations here that FullStory intercepted and used the data itself."); *Swarts*, 689 F. Supp. 3d at 745-46 (dismissing CIPA claim where plaintiff failed to allege that third party could have used information obtained for any other purpose besides relaying it to retailer).

In *Cody,* 658 F. Supp. 3d at 782-83, the Court dismissed the section 631(a) claim, holding that allegations that third parties "use the code embedded in the chat program to 'harvest valuable data from such [customer] communications for the benefit of their clients like Defendant'" was "is too vague and conclusory to meet the standard, as it did not provide facts suggesting that the third parties are "recording Defendant's customer's information for some use or potential future use beyond simply supplying this information back to Defendant." This is more than what was alleged here, and it is insufficient.

In *Graham*, 533 F. Supp. 3d at 832, the Court dismissed the Section 631(a) claim because "there are no allegations here that FullStory intercepted and used the data itself. Instead, as a service provider, FullStory is an extension of Noom. It provides a tool — like the tape recorder in *Rogers* — that allows Noom to record and analyze its own data in aid of Noom's business. [] It is not a third-party eavesdropper." The same is true here. Plaintiff does not allege facts to show that Google or UserWay intercepted and used the data themselves. Instead, they are vendors or service providers that allegedly capture their client TalentBridge's data *for TalentBridge's use* and thus do not constitute third party eavesdroppers under section 631(a). *See id.*; *see also Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (dismissing section 631(a) claim because the plaintiff "does not allege a single fact that suggests the third-party 'intercepted and used the data itself'" explaining, "[a]s in *Graham* ... Defendant uses a third-party vendor to 'record and analyze its own data in aid of [Defendant]'s business,' not the 'aggregation of data for resale,' which makes the third-party an 'extension' of

Glaser Weil

Defendant's website, not a 'third-party eavesdropper.'"); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1035 (S.D. Cal. 2024) (granting motion to dismiss where "[t]he complaint 'only supports the inference that [the vendor] receives and stores these communications for the benefit of its client, the Defendant.'").

Because Plaintiff has failed to plausibly show that any third party has the capacity to use or did use intercepted protected data for another purpose, Plaintiff has failed to state a claim.

**D. <u>There Is No Violation of the Fourth Clause Because There Is No Violation of Another Clause</u>**

"With respect to the fourth clause [of Section 631(a)], a plaintiff alleging a CIPA violation must adequately allege a violation under one of the first three clauses of Section 631(a)." *Esparza*, 2024 WL 655986, at *4 (*citing Super Bright*, 2023 WL 8424472, at *11). Plaintiff has failed to allege a violation under any of the first three clauses of Section 631(a), and thus any allegations under the fourth clause fail as a matter of law. *Id.*

The FAC must be dismissed without leave to amend. Plaintiff has already amended his complaint and has failed to cure these defects, confirming leave to do so *again* will be futile.

## VI. <u>CONCLUSION</u>

Plaintiff fails to allege diversity jurisdiction or injury-in-fact sufficient to establish Article III standing, and thus this Court lacks subject matter jurisdiction and the FAC should be dismissed without leave to amend. The FAC also should be dismissed without leave to amend because Plaintiff fails to plead the required elements of a CIPA Section 631(a) claim, and despite numerous opportunities to cure the deficiencies, he has failed to do so.

DATED: April 20, 2026 Respectfully submitted,

GLASER WEIL FINK HOWARD



Glaser Weil

JORDAN & SHAPIRO LLP

By: /s/ Sarah G. Miller
ELIZABETH A. SPERLING
SARAH G. MILLER
Attorneys for Defendant
TalentBridge, Inc.

Glaser Weil

**CERTIFICATE OF COMPLIANCE WITH MEET AND CONFER**

I certify that the parties met on April 13, 2026 via Google Meet videoconference. During this discussion, the parties thoroughly discussed each of the issues raised in the motion, and attempted in good faith to resolve the motion in whole or in part.

DATED: April 20, 2026

GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP

By: /s/ Sarah G. Miller
ELIZABETH A. SPERLING
SARAH G. MILLER
Attorneys for Defendant
TalentBridge, Inc.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1**

The undersigned, counsel for record TalentBridge, Inc., certifies that this Memorandum of Points and Authorities contains 6,953 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 20, 2026

GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP

By: /s/ Sarah G. Miller
ELIZABETH A. SPERLING
SARAH G. MILLER
Attorneys for Defendant
TalentBridge, Inc.



Glaser Weil