Vivek Shah
1301 N Broadway Ste 32167
Los Angeles, CA 90012
newvivekshah@gmail.com
(224) 246-2874
Plaintiff, *Pro Se*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

VIVEK SHAH,

     Plaintiff,

v.                                                    Case No.: <u>2:26-cv-00222-AH-SSC</u>

TALENTBRIDGE, INC.,                    Hon. Anne Hwang, District Judge

     Defendant.

## PLAINTIFF'S [CORRECTED] OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(1) AND RULE 12(b)(6)

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 5

II.  LEGAL STANDARD ........................................................................................ 6

III. ARGUMENT ..................................................................................................... 7

    A.  The Court Has Subject Matter Jurisdiction ............................................. 7

        1. Plaintiff Adequately Pleads the Amount in Controversy .......................... 7

        2. Plaintiff Has Article III Standing .......................................................... 8

            a. Tester Status and Litigation History Do Not Defeat Standing ......... 8

            b. Plaintiff Alleges a Concrete, Particularized Injury ....................... 12

            c. Section 631 Does Not Require Reasonable Expectation of Privacy .................................................................................. 15

    B.  The FAC States a Claim Under Section 631(a) ..................................... 17

        1. The FAC Alleges Protected Content ...................................................... 17

        2. The FAC Alleges Interception While In Transit .................................... 20

        3. Google Analytics and UserWay Are Third-Party Eavesdroppers ............ 22

        4. Plaintiff Did Not Consent; "Reject All" Forecloses Defendant's Argument .................................................................................. 25

        5. The Fourth-Clause Aiding-and-Abetting Claim Is Pleaded ..................... 27

    C.  The Request for Judicial Notice Should Be Denied ............................... 29

    D.  Leave to Amend Should Be Granted If Any Deficiency Is Found ....................... 30

IV.  CONCLUSION ................................................................................................. 31

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................. 7

*Augustine v. Great Wolf Resorts, Inc.*, No. 23-cv-00281, 2024 WL 3450967 (S.D. Cal. July 18, 2024) ................................................................................................. 9

*Bornstein v. Sonic Auto., Inc.*, No. G047251, 2014 WL 431203 (Cal. Ct. App. Feb. 3, 2014) ........................................................................................................... 16

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ...................................... 17

*Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020 (C.D. Cal. 2023) ....... 20, 24

*Camplisson v. Adidas Am., Inc.*, No. 25-cv-00603, 2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ........................................................................................................ 12, 26

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024)................................................ 9

*Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967 (S.D. Cal. 2023)................................ 18

*D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031 (9th Cir. 2008) .................. 10, 29

*Erickson v. Pardus*, 551 U.S. 89 (2007)............................................................................. 6

*Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-00102, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ........................................................................................................ 9

*Frasco v. Flo Health, Inc.*, No. 21-cv-00757, 2025 WL 2680068 (N.D. Cal. Sept. 17, 2025) ........................................................................................................ 12

*Gabrielli v. Haleon US Inc.*, No. 25-cv-02555, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........................................................................................................ 11

*Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533, 2025 WL 1939957 (N.D. Cal. July 14, 2025) ............................................................................................ 11

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021)................................. 22, 24

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ................................ 12

*Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024) ................. 17

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) ....................................................... 15

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) ......................................... 18

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014)...................................................... 18

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023) ................................. 20

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023)............. 22, 23, 24, 25

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) ............................................................................................................................. 19, 27

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ..................................... 21

*Langer v. Kiser*, 57 F.4th 1085 (9th Cir. 2023) ................................................. 9, 11, 12, 29

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ................................................. 30

*Matera v. Google Inc.*, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ............................ 19

*Mikulsky v. Bloomingdale's, LLC*, No. 24-3564, 2025 WL 1718225 (9th Cir. June 20, 2025) .................................................................................................................................. 22

*Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007) ............................... 10

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) ..................... 30

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ........................................ 10

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ...................................... 26

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ............................................ 14, 15

*Ribas v. Clark*, 38 Cal. 3d 355 (1985) ................................................................... 12, 23, 27

*Ross v. Williams*, 950 F.3d 1160 (9th Cir. 2020) ............................................................... 6

*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021) ............................................... 24

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................................... 12, 13

*St. Aubin v. Carbon Health Techs., Inc.*, No. 4:24-cv-00667, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ............................................................................................................... 18

*Strojnik v. Bakersfield Conv. Hotel I, LLC*, 436 F. Supp. 3d 1332 (E.D. Cal. 2020) ....... 10

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ....................................... 12, 13, 14, 15

*Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (C.D. Cal. 2023) .............. 10

*Webb v. Louw*, No. E032249, 2003 WL 22017840 (Cal. Ct. App. Aug. 27, 2003).......... 16

*Williams v. What If Holdings, LLC*, No. 22-cv-03780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ..................................................................................................................... 19

## Statutes

28 U.S.C. § 1332 .................................................................................................................. 7

Cal. Penal Code § 631(a) ............................................................................................... passim

Cal. Penal Code § 637.2 .................................................................................................. 7, 12

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendant TalentBridge, Inc. ("TalentBridge") has filed a motion that spends more ink attacking Plaintiff's character than engaging with the California Invasion of Privacy Act ("CIPA"). Its opening sentence labels Plaintiff a "convicted felon and serial, vexatious litigant"; its request for judicial notice attaches twelve documents from unrelated matters, including a 2012 criminal affidavit and a motion to terminate supervised release. None of this has anything to do with whether TalentBridge's website transmitted Plaintiff's private search queries to Google Analytics and UserWay without his consent. It is prejudice dressed up as procedure, and this Court should see it for what it is.

Stripped of the ad hominem, what remains is a straightforward CIPA case. Plaintiff visited TalentBridge's job-search website and entered search terms similar to "felony-friendly jobs" and "jobs no background check," while filtering for Los Angeles. FAC ¶¶ 25–27, 69. Before submitting any searches, Plaintiff clicked "Reject All" on Defendant's cookie banner. FAC ¶¶ 31–36. Despite that express rejection, TalentBridge's page architecture placed Plaintiff's search terms into the live page URL (via a _search= parameter) and transmitted that URL—containing the exact search terms—outward to Google Analytics at *analytics.google.com/g/collect* and to UserWay at *cdn77.api.userway.org*,

contemporaneously with the search interaction and before the communication had become exclusively confined between Plaintiff and Defendant. FAC ¶¶ 38–49.

The FAC alleges every element Defendant claims is missing. It identifies the specific terms searched (¶¶ 25–27), the specific third-party recipients (¶¶ 42–45, 70), the specific interception mechanism (¶¶ 38–49), the specific timing (¶¶ 48, 71), and the specific absence of consent (¶¶ 31–36). On jurisdiction, the math is trivial: sixteen counts at $5,000 each under California Penal Code § 637.2 equals $80,000, above the $75,000 diversity threshold. On standing, Plaintiff alleges a completed, nonconsensual disclosure of stigmatizing communications—an injury closely analogous to the common-law tort of intrusion upon seclusion. On the merits, the FAC pleads every element of a fourth-clause aiding-and-abetting claim. The motion should be denied.

## II.  LEGAL STANDARD

Plaintiff appears *pro se*. “A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.” *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Courts “must frequently look to the contents of a *pro se* filing rather than its form” and must “afford the petitioner the benefit of any doubt.” *Ross v. Williams*, 950 F.3d 1160, 1173 (9th Cir. 2020).

Otherwise, Plaintiff accepts Defendant's recitation of Rule 12(b)(1) and 12(b)(6) standards, with one clarification: under both, the Court accepts the FAC's well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendant repeatedly asks the Court to disregard what the FAC actually pleads in favor of inferences drawn from other lawsuits. That is not how Rule 12 works.

## III.  ARGUMENT

### A.  The Court Has Subject Matter Jurisdiction

### 1.  Plaintiff Adequately Pleads the Amount in Controversy

Defendant's lead jurisdictional argument fails on arithmetic. The FAC is captioned "Counts One Through Sixteen" and alleges sixteen separate violations of Section 631(a). FAC ¶¶ 76–84. Each completed violation carries a statutory penalty of $5,000 under California Penal Code § 637.2. Sixteen times $5,000 is $80,000, which exceeds the $75,000 threshold of 28 U.S.C. § 1332(a). That ends the inquiry.

Defendant's attempt to reverse-engineer the amount in controversy from a different case involving a different plaintiff—*Shah v. Russco57, LLC*, 2026 WL 71868 (C.D. Cal. Jan. 9, 2026)—is both improper and unpersuasive. In *Russco57*, the plaintiff alleged only thirteen violations, which produced just $65,000 in statutory damages. Here, the FAC pleads sixteen. The FAC also expressly alleges

that "[e]ach separate search submission and each separate third-party acquisition of a search-bearing communication constituted at least one separate violation" (¶ 83), and that "the aggregate statutory exposure exceeds $75,000" (¶ 11). Defendant does not—and cannot—dispute that sixteen times $5,000 clears the threshold.

Beyond statutory damages, the FAC seeks preliminary and permanent injunctive relief and declaratory relief. FAC, Prayer ¶¶ B–D. The value of injunctive relief (including the cost to Defendant of reconfiguring its website architecture, terminating its third-party integrations, or implementing a compliant consent flow) is properly included in the amount-in-controversy analysis and independently supports jurisdiction.

Defendant's demand for "prima facie proof" of violations at the pleading stage inverts the applicable standard. A plaintiff invoking diversity jurisdiction need only allege the threshold is met; he need not prove it at a Rule 12 hearing. The exact number of network calls, page loads, and third-party acquisitions is uniquely within Defendant's control, as the FAC alleges. FAC ¶ 11. If Defendant has evidence that fewer than sixteen violations occurred, that is a factual dispute for discovery, not grounds for dismissal on the pleadings.

### 2. Plaintiff Has Article III Standing

#### a. *Tester Status and Litigation History Do Not Defeat Standing*

Defendant builds its standing argument around the premise that Plaintiff is a "tester" who cannot have suffered injury-in-fact because he "sought out" the alleged violation. Courts across this Circuit have repeatedly and decisively rejected that reasoning.

In *Augustine v. Great Wolf Resorts, Inc.*, No. 23-cv-00281, 2024 WL 3450967, at *7 (S.D. Cal. July 18, 2024), the court squarely held that "[w]hether Plaintiff is a 'frequent filer' in this District bears no relevance on whether Plaintiff consented to a third-party employing session replay software," and that "whether Plaintiff is a 'tester' 'do[es] not show Plaintiff consented to' [the third party's] alleged eavesdropping." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1000 (N.D. Cal. 2024), reached the same conclusion: the defendant there argued that the plaintiff "'intended to be recorded' because she admits that she acted as a 'tester,'" and the court held "This argument fails." Accord *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-00102, 2024 WL 559241, at *4 (S.D. Cal. Feb. 12, 2024) ("The written nature of web chats and Plaintiff's 'tester' status do not . . . show Plaintiff consented to [the third party's] alleged eavesdropping.").

The Ninth Circuit has endorsed tester litigation in the strongest terms and warned against exactly the argument Defendant advances. In *Langer v. Kiser*, 57 F.4th 1085, 1094–95 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 823 (2024), the court emphasized "the necessity and desirability of serial litigation by committed

individuals to enforce civil rights" and cautioned district courts against "adverse credibility determinations based on litigation history." Earlier, in *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008), the court wrote: "The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny." And in *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007), the court instructed: "District courts should not condemn such serial litigation as vexatious as a matter of course."

Other courts have refused to let defendants turn motions to dismiss into vehicles for attacks on serial plaintiffs. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (serial litigants who enforce consumer protection statutes should be "praised rather than vilified"); *Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp. 3d 1332, 1337 (E.D. Cal. 2020) (defendant's invitation to consider "the nature of Plaintiff's serial litigation" in deciding a motion to dismiss "directly contradicts Ninth Circuit authorities"); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 974 n.2 (C.D. Cal. 2023) ("The Court is not inclined to question [plaintiff's] allegations on the basis that she has filed other [CIPA] lawsuits.").

Defendant's lone contrary authority—*Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1122387 (C.D. Cal. Mar. 14, 2025)—is an unpublished district-court order

that has been explicitly distinguished. In *Gabrielli v. Motorola Mobility LLC*, No.
24-cv-09533, 2025 WL 1939957, at \*7 (N.D. Cal. July 14, 2025), the court explained
that *Rodriguez* "do[es] not apply . . . given that [the plaintiff] pleads that he is *not* a
tester" and visited the website "to 'browse information' . . . and not to seek out
privacy violations." The same reasoning appeared one month later in *Gabrielli v.
Haleon US Inc.*, No. 25-cv-02555, 2025 WL 2494368, at \*6 (N.D. Cal. Aug. 29,
2025). Here, the FAC expressly alleges that Plaintiff "visited Defendant's website
for the genuine purpose of searching for employment opportunities for himself" and
"did not visit the site merely to manufacture a lawsuit." FAC ¶¶ 23–24. The Court
must accept that allegation on a Rule 12 motion.

Defendant responds that Plaintiff's bona-fide-purpose allegations are
"implausible" because of his litigation history. That is precisely the impermissible
credibility determination the Ninth Circuit rejected in *Langer*. *Langer* is binding;
*Rodriguez* is not.

Defendant's "implausibility" argument is also procedurally defective. Rule
12(b)(6) asks whether the *allegations* in the operative complaint, accepted as true,
state a claim. It does not permit a district court to reject well-pleaded allegations by
importing extrinsic facts from *other* lawsuits. The only exception to that rule is
judicial notice of undisputed public records for the fact of their existence—not for
the truth of contested factual matter. Defendant's strategy inverts the rule: it asks the

Court to take judicial notice of allegations in unrelated complaints and then use those allegations to declare *these* allegations implausible. That move has been rejected by every court of appeals to consider it. The Ninth Circuit's instruction in *Langer* forecloses it here.

### b. *Plaintiff Alleges a Concrete, Particularized Injury*

Defendant conflates Article III's concrete-injury requirement with a sensitivity showing the statute does not impose. The California Legislature was explicit: "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal. Penal Code § 637.2(c). The California Supreme Court confirmed decades ago that Section 637.2 "authorizes civil awards . . . for each violation of the Privacy Act despite a party's inability to prove actual injury." *Ribas v. Clark*, 38 Cal. 3d 355, 365 (1985).

Federal courts interpreting CIPA post-*Spokeo* and post-*TransUnion* have consistently held that a CIPA violation itself constitutes concrete injury. In *Camplisson v. Adidas America, Inc.*, No. 25-cv-00603, 2025 WL 3228949, at *4 (S.D. Cal. Nov. 18, 2025), the court held bluntly: "A violation of one's privacy rights is an injury in itself, and [§ 637.2] does not require more." *Frasco v. Flo Health, Inc.*, No. 21-cv-00757, 2025 WL 2680068, at *12 (N.D. Cal. Sept. 17, 2025), is even more direct: "Under Section 637.2, there is no requirement of an injury independent of the privacy injury caused by an unconsented recording." *Greenley v. Kochava,*

*Inc.*, 684 F. Supp. 3d 1024, 1038 (S.D. Cal. 2023), reached the same result, rejecting the argument that CIPA requires economic loss.

Defendant's reliance on *Spokeo* is also misplaced at a doctrinal level. *Spokeo* held that a statutory violation alone—without more—is insufficient when the statutory right vindicated is not itself tied to a concrete interest. But here, the statutory interest CIPA protects is a classic common-law interest (freedom from unauthorized interception of private communications), and the Supreme Court in *TransUnion* expressly identified intrusion upon seclusion as one of the common-law privacy torts that furnishes a close historical analogue. 594 U.S. at 425. A completed CIPA violation thus satisfies *Spokeo because* the statute codifies a harm that was actionable at common law, not *despite* it. That is why decision after decision in this Circuit has held that an unconsented CIPA recording, without more, confers Article III standing.

In any event, Plaintiff alleges far more than a bare statutory violation. He alleges the completed, nonconsensual disclosure of stigmatizing communications about criminal-history employment barriers to independent third parties, despite his express rejection of tracking. FAC ¶¶ 27–29, 60–67. He alleges loss of control over his private digital activity (¶ 63); exposure to profiling based on his search history (¶ 64); deterrence from future use of similar websites (¶ 68); reliance injury flowing from his clicked "Reject All" (¶ 65); and emotional and dignitary harm (¶ 66). These

harms are closely analogous to the common-law tort of intrusion upon seclusion—the very analogue *TransUnion* identified as sufficient to confer standing.

Defendant's reliance on *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), is misplaced. The *Popa* plaintiff alleged only that a website collected her pet-store preferences and her street address—information the Ninth Circuit described as not "embarrassing, invasive, or otherwise private." Plaintiff's search terms here are of a wholly different character: searches for "felony-friendly jobs" and "jobs no background check" communicate stigmatizing, nonpublic information about the searcher's employment circumstances and concern about criminal-history screening. No reasonable person would equate pet-store preferences with criminal-history-related job searches. *Myers v. Dick's Sporting Goods, Inc.* is distinguishable for the same reason: the plaintiffs there alleged only routine browsing metadata (cart additions, page views, payment-step interactions). Here, the content is the *substance* of user-generated search queries, not passive clickstream data.

The harm Plaintiff alleges also has a "close historical or common-law analogue" under *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021): the tort of intrusion upon seclusion. That tort requires (1) an intentional intrusion, (2) upon a private matter or seclusion, (3) that would be highly offensive to a reasonable person. Each element is alleged. TalentBridge's architecture was an intentional design choice that routed Plaintiff's search-bearing URL to Google Analytics and UserWay

(intent). The subject matter—private, nonpublic search queries communicated to what Plaintiff believed to be a single counterparty, especially after clicking "Reject All"—falls within the zone of seclusion a user expects when interacting with a single website's search tool (privacy). And transmitting an individual's criminal-history-related job search to independent data-aggregation vendors, without consent, is plainly offensive to a reasonable person (offensiveness). That is all *TransUnion* requires.

On the "highly offensive" element in particular, Defendant misframes the inquiry. The question is not whether the *subject* of the search is itself scandalous; it is whether the *disclosure*—the unauthorized transmission of the content of a private communication to third parties—is offensive to a reasonable person. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295–96 (2009). A reasonable person would consider it highly offensive for a website to transmit search queries about criminal-history-related employment—a topic freighted with social stigma, family reputation, and real consequences for the searcher's ability to earn a living—to independent analytics and advertising vendors, particularly after the user has expressly clicked "Reject All" on a tracking banner. That is a paradigmatic privacy intrusion, not the kind of "routine commercial behavior" the Ninth Circuit described in *Popa*.

### c.  *Section 631 Does Not Require a Reasonable Expectation of Privacy*

Defendant repeatedly invokes a "protectible privacy interest" test that Section 631 does not impose. Unlike Section 632—which, by its terms, protects only "confidential communications" and defines that category to require a reasonable expectation of privacy—Section 631 broadly prohibits the interception of *any* communication without the consent of all parties. The Legislature used "confidential" in Section 632 and omitted it from Section 631; that choice is not a drafting oversight to be rewritten by motion.

California appellate courts have confirmed the distinction. In *Webb v. Louw*, No. E032249, 2003 WL 22017840, at *14 (Cal. Ct. App. Aug. 27, 2003), the court rejected the very argument Defendant advances: "Louw has failed to cite any authority for her proposition that Penal Code section 631 requires a plaintiff to prove that he or she had an expectation of privacy. Whether or not Webb had a reasonable expectation of privacy . . . has no bearing upon whether Louw's actions violated section[] 631." Similarly, *Bornstein v. Sonic Auto., Inc.*, No. G047251, 2014 WL 431203, at *7 (Cal. Ct. App. Feb. 3, 2014), explained: "Unlike section 632, which proscribes the recording of communications of which the parties have a reasonable expectation of privacy, section 631 broadly proscribes, inter alia, the interception of *any* communication without the consent of all the parties involved."

Even if Section 631 imported Section 632's sensitivity threshold (it does not), Plaintiff's search terms would clear it. The Ninth Circuit has held that "users have a

reasonable expectation of privacy in 'unique search terms.'" *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 859 (C.D. Cal. 2024) (collecting cases); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) ("Ninth Circuit law indicates [ ] users [have a reasonable expectation of privacy] over URLs that disclose either unique search terms or the particular document within a website that a person views."). Queries about felony-friendly employment reveal far more sensitive information than the baseline search terms those decisions protected.

## B.  The FAC States a Claim Under Section 631(a)

Plaintiff does not contest that TalentBridge, as a party to its own communications, cannot be directly liable under the first three clauses of Section 631(a). The FAC instead alleges fourth-clause aiding-and-abetting liability, which requires a predicate violation of clause two by a third party. FAC ¶¶ 77, 80, 82. The FAC pleads each element of the predicate violation and each element of aiding and abetting.

### 1.  The FAC Alleges Protected Content

CIPA's second clause protects the "contents or meaning" of communications in transit. Because "[a] violation of CIPA is analyzed under the same standards applied to a violation of the ECPA," the Ninth Circuit's Wiretap Act jurisprudence governs. Under that jurisprudence, "contents" means "the intended message

conveyed by the communication", as opposed to "record information regarding the characteristics of the message." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Critically, while a URL containing only basic identification information is not "content," a "user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication." *Id.* at 1108–09.

Courts have applied this rule consistently to URLs that carry search queries. *St. Aubin v. Carbon Health Techs., Inc.*, No. 4:24-cv-00667, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024) ("Descriptive URLs that reveal specific information about a user's queries reflect the 'contents' of a communication."); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) (plaintiffs plausibly pled "contents" where they alleged "personal search queries"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act."). The Ninth Circuit recently reaffirmed this principle, holding that a plaintiff who alleged "real-time capture of the contents of [her] communications on Defendants' website without her consent, not merely the real-time capture of information regarding the characteristics of the communications," stated a claim under Section 631(a). *Mikulsky v.*

*Bloomingdale's, LLC*, No. 24-3564, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025).

That CIPA reaches communications routed over the Internet is settled. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications."); *Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (collecting cases); *Williams v. What If Holdings, LLC*, No. 22-cv-03780, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("[C]ourts have applied Section 631(a) via the language of its second clause to the internet browsing context."). Defendant does not seriously contest this point, but the framework matters: the relevant question is whether a third party "read, or attempted to read, or to learn the contents" of an HTTP communication passing between Plaintiff's browser and Defendant's server, not whether a copper telephone wire was physically tapped.

The FAC alleges that Plaintiff entered search terms similar to "felony-friendly jobs" and "jobs no background check" with the Los Angeles city filter (FAC ¶¶ 25–27, 69), and that Defendant's page architecture placed those search terms into the live page URL through a *_search=* parameter that was then transmitted outward to third parties (FAC ¶¶ 38–45). Those are user-generated search queries—the paradigm example of "contents" under both CIPA and the Wiretap Act. Defendant's

attempt to recharacterize them as "generalized" or "nonspecific" (Mem. at 10) ignores what the queries actually communicate: that the searcher has a criminal-history concern affecting his employment search.

Defendant also faults the FAC for pleading terms "similar to" rather than quoting them verbatim. But "[t]here is no requirement that [a plaintiff] specifically allege the exact contents of her communications." *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023) ("[T]o the extent Disney suggests Plaintiffs must plead the exact communications they had with the ESPN.com website, other courts have rejected that position."). The FAC's specificity is more than adequate.

### 2.  The FAC Alleges Interception While In Transit

The "in transit" element requires factual allegations about the method or nature of interception showing that the acquisition was contemporaneous with transmission rather than retrieved from storage. The FAC meets that standard with unusual specificity. It alleges that Defendant's page architecture placed Plaintiff's search term into the live page URL via a *_search=* parameter (¶ 38); that third-party code present on the page accessed the URL (¶ 39); that Plaintiff observed, using browser developer tools, contemporaneous outbound cross-origin HTTP requests to Google Analytics at *analytics.google.com/g/collect* and to UserWay at *cdn77.api.userway.org* (¶¶ 41–45); and that "[t]hose third-party requests occurred

contemporaneously with Plaintiff's search interaction and results-page generation" (¶ 5)—"before the communication had become exclusively confined between Plaintiff and Defendant" (¶¶ 48, 71).

Those allegations identify *what* was intercepted (the search-bearing URL), *by whom* (Google Analytics and UserWay), *how* (via outbound cross-origin requests triggered by page-load code), and *when* (during the page-load process, contemporaneous with the search). That is precisely the level of specificity Defendant's cited cases—including *Valenzuela v. Super Bright LEDs, Inc.*, *Heiting v. Taro Pharms.*, and *Licea v. American Eagle Outfitters*—found *missing*. Those cases criticized complaints that repeated the word "intercept" without technical detail; they did not hold that a plaintiff who identifies the specific URL parameter, endpoints, mechanism, and timing fails to state a claim. To the contrary, such allegations are enough.

The Ninth Circuit's "in transit" doctrine is satisfied where the acquisition occurs "contemporaneous with transmission," not from post-transmission storage. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). The FAC's architectural allegations describe exactly that scenario. When a user submits a search, Defendant's page-load code executes *in the same browser event* that produces the outbound cross-origin request to *analytics.google.com/g/collect* and *cdn77.api.userway.org*, carrying the search-bearing URL in the request path. FAC

¶¶ 41–49. The third-party acquisition is not retrieval from stored data; it is a live HTTP request occurring as the search communication passes from browser to server. That is contemporaneous transmission. And the Ninth Circuit's most recent word on this question—*Mikulsky v. Bloomingdale's, LLC*, 2025 WL 1718225, at *1 (9th Cir. June 20, 2025)—confirms that a plaintiff alleging "real-time capture of the contents of [her] communications" states a claim under the second clause.

### 3.  Google Analytics and UserWay Are Third-Party Eavesdroppers

Defendant's strongest argument on the merits is that Google Analytics and UserWay are mere "extensions" or "tools" of TalentBridge rather than independent third parties, borrowing the framework of *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021). But the *Graham* framework was directly challenged and narrowed by *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023), which identified two fundamental problems with reading a "use" requirement into Section 631(a)'s second clause.

First, reading "use" into the second prong "add[s] requirements that are not present (and swallow[s] the third prong in the process)," because the statute's third prong already independently penalizes the "use" of information obtained through interception. *Javier*, 649 F. Supp. 3d at 900. Two prongs addressing the same conduct would be redundant; the Legislature did not draft a redundancy.

Second, the California Supreme Court in *Ribas v. Clark*, 38 Cal. 3d 355 (1985), "emphasized the privacy concerns at issue with having an 'unannounced second auditor' listening in on the call," a concern that implicates an individual's "right to control the nature and extent of the firsthand dissemination of his or her statements." *Javier*, 649 F. Supp. 3d at 900 (citing *Ribas*). Google Analytics and UserWay are precisely the "unannounced second auditors" that Section 631 targets.

The FAC alleges, in terms this Court must accept as true, that Google Analytics and UserWay are "independent third parties operating services for multiple customers and purposes" with "independent technical ability to receive, store, analyze, process, and use records" of Plaintiff's search data. FAC ¶¶ 53–59. It is a matter of common knowledge, repeatedly acknowledged in this Court's decisions, that Google Analytics aggregates user data across millions of websites for Google's own commercial purposes—including ad targeting, audience segmentation, and product development. UserWay likewise operates as an independent accessibility-technology vendor serving thousands of websites and maintaining its own data infrastructure. Defendant does not seriously argue that either company's only function is to relay data back to TalentBridge; it argues only that Plaintiff must prove *how* the data was used. But *Javier* rejected that too: a plaintiff need only plead "non-conclusory factual allegations to support the use

capabilities of the third-party software company involved." 649 F. Supp. 3d at 900. The FAC does.

Google itself is not an analytics "tool" in any meaningful sense; it is one of the largest advertising companies in history, and Google Analytics is a key input to its advertising machine. A plaintiff need not prove Google's internal business practices to clear the *Javier* "capability" threshold; allegations that the third party is an independent, multi-client service with the *capability* to use data suffice. Courts applying *Javier* have repeatedly denied motions to dismiss on this basis where the complaint alleges, as the FAC does, that the third party is an independent vendor with multi-client data infrastructure. See, e.g., *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1028–29 (C.D. Cal. 2023); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 519–20 (C.D. Cal. 2021). Defendant's reliance on *Graham v. Noom, Inc.*—where the plaintiff alleged nothing beyond the existence of a session-replay tool—cannot carry the day when the FAC here identifies an independent advertising company and an independent accessibility vendor, each with distinct data infrastructure and distinct commercial motivations.

Defendant's reliance on *Cody v. Boscov's, Inc.* and *Swarts v. Home Depot* is misplaced because both decisions turned on the plaintiff's failure to allege *anything* about the third party's independent use capabilities. Here, Plaintiff alleges the nature of both entities (independent analytics vendor; independent accessibility vendor),

their multi-client architectures, and their contextual data collection (timestamp, referrer, browser signature). FAC ¶¶ 53–59. That is enough at the pleading stage, where all inferences are drawn for Plaintiff.

### 4. Plaintiff Did Not Consent; "Reject All" Forecloses Defendant's Argument

A core fact distinguishes this case from the run of CIPA matters: before submitting any searches, Plaintiff affirmatively clicked "Reject All" on TalentBridge's cookie banner, which offered "Customise," "Reject All," and "Accept All" as its three choices. FAC ¶¶ 31–36. That click is more than the absence of consent; it is the explicit rejection of the very tracking Defendant now says Plaintiff consented to.

Even without the "Reject All" click, consent under Section 631(a) must be *prior* consent; retroactive disclosure does not cure a completed violation. The Ninth Circuit held as much in *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022), reversing a dismissal that rested on a user's agreement to a privacy policy presented only after the challenged recording occurred. The court held that Section 631(a) "requires the prior consent of all parties to a communication," and that consent obtained after the fact is inadequate. *Id.* Courts have since applied *Javier* to reject retroactive-consent defenses in cookie-banner cases. See, e.g., *McClung v. AddShopper, Inc.*, No. 23-cv-01996, 2024 WL

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

189006, at *3 (N.D. Cal. Jan. 17, 2024) (retroactive agreement insufficient where tracking cookies synced "the moment" the user accessed the site).

To the extent Defendant implies that its Terms of Service or Privacy Policy, linked from the site footer, establishes consent, the Ninth Circuit's rule is clear: browsewrap terms linked without an affirmative assent mechanism do not bind the user. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014) ("[W]here a website makes its terms of use available via a conspicuous hyperlink . . . but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons . . . is insufficient to give rise to constructive notice."). *Camplisson* recently applied this rule in a closely analogous CIPA context: "Defendant's website only hyperlinked the Terms and Conditions at the footer of the website and did not have a pop-up window or other mechanism that would obtain Plaintiffs' and Class members' affirmative consent. Therefore, Defendant does not meet the second requirement to put Plaintiffs on notice." 2025 WL 3228949, at *9. Here, Defendant's only affirmative consent mechanism was the cookie banner—and Plaintiff clicked "Reject All."

Defendant's brief cites snippets of the Terms of Service to suggest that analytics and browser information "may" be collected. That citation hurts, not helps, Defendant's position. First, the Terms were not presented to Plaintiff for affirmative

assent before his searches, which is the only time consent could have operated as "prior" consent under *Javier*. Second, the Terms speak of "cookies" carrying an "anonymous unique identifier"—not of user-generated search queries being transmitted verbatim to third-party servers via the page URL. Disclosing one category of data collection does not authorize a qualitatively different one. Third, Plaintiff's "Reject All" click was a direct response to the cookie banner's language about "personalized ads," "content," and "analyze traffic." FAC ¶ 32. If a user clicks "Reject All" in response to a banner describing those exact practices, the reasonable interpretation is not that the user consented; it is that the user rejected them.

The broader point is that if Defendant's "consent" theory were accepted, no user who clicked "Reject All" would ever have a CIPA claim, because every website that discloses *anything* in a footer-linked policy could claim the user "knew" tracking might occur. That reading of CIPA would gut the statute. It would convert an opt-in regime into a constructive opt-out, swallowing the "prior consent" rule that the Ninth Circuit enforced in *Javier* and that the California Supreme Court laid down in *Ribas*. The point of an express "Reject All" button is to put the user in control of non-essential tracking. Honoring that button is a legal requirement, not an optional courtesy.

### 5. The Fourth-Clause Aiding-and-Abetting Claim Is Pleaded

Because the FAC adequately alleges a predicate violation of clause two by Google Analytics and UserWay, the fourth-clause aiding-and-abetting claim against TalentBridge follows. The FAC alleges that TalentBridge "intentionally aided, agreed with, employed, and/or conspired with" those third parties by (1) embedding their code on the jobs page, (2) structuring the page so that Plaintiff's search term was placed in the live URL through the _search= parameter, and (3) permitting the search-bearing URL to be transmitted to third-party endpoints during the search session. FAC ¶ 80. Those are deliberate architectural choices—choices that required planning, coding, and deployment—not inadvertent consequences. That suffices under the fourth clause.

Defendant does not argue that the FAC fails to allege aiding and abetting *qua* aiding and abetting; it argues only that there is no predicate violation to aid. But because the predicate violation is adequately alleged (as shown above), the fourth-clause claim rises or falls with it. The fourth clause is broad by design, imposing liability on anyone who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a). Embedding a vendor's code into a page that is architected to transmit user communications outward easily satisfies "permit[ting]" or "caus[ing] to be done" a third-party interception. The FAC's allegations of deliberate architecture (¶ 49: "Defendant's own design choices

caused this to occur") make that even more clear. Nothing in Defendant's motion addresses these allegations directly.

### C. The Request for Judicial Notice Should Be Denied

Defendant's request for judicial notice seeks to inject twelve exhibits—a 2012 criminal affidavit, a supervised-release motion, and complaints from unrelated CIPA cases against different companies—into this case for the sole purpose of prejudicing the Court against a *pro se* Plaintiff. None of it bears on the question before the Court: whether TalentBridge's website transmitted Plaintiff's search-bearing URL to Google Analytics and UserWay without consent.

Courts may take judicial notice of the *fact* of court filings, but not of the truth of matters asserted in them. Defendant asks for more: it asks the Court to draw adverse credibility inferences from prior litigation, to treat unrelated complaints as evidence of implausibility here, and to apply *Russco57*'s thirteen-violation arithmetic to this sixteen-violation case. That is exactly the move the Ninth Circuit has instructed district courts to resist. *Langer*, 57 F.4th at 1094–95; *D'Lil*, 538 F.3d at 1040; *Valenzuela*, 686 F. Supp. 3d at 974 n.2.

The exhibits are also "immaterial" and "impertinent" within the meaning of Rule 12(f). Plaintiff's decade-old criminal history tells this Court nothing about TalentBridge's 2026 website architecture. Complaints from other cases involving different defendants, different websites, and different vendors tell this Court nothing

about whether Google Analytics and UserWay acquired search-bearing URLs here. The RJN should be denied in its entirety; in the alternative, the Court should take notice only of the existence of the filings and disregard them as immaterial to the legal issues presented.

The RJN's purpose is also transparent from its structure. The first two exhibits (a 2012 criminal affidavit and a supervised-release motion) have no conceivable relevance to CIPA. Exhibits 3 through 5 are complaints filed before Plaintiff had ever litigated a CIPA case. Exhibits 6 through 10 are CIPA complaints against *different* companies with *different* websites and *different* vendors. Exhibits 11 and 12 are the initial and amended complaints in *Russco57*, offered for the apparent purpose of inviting this Court to import jurisdictional rulings from a case where the plaintiff alleged only thirteen violations, not sixteen. None of these exhibits can be judicially noticed for the truth of the matters asserted, and Defendant's effort to use them for that purpose is improper. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (judicial notice is limited to undisputed "matters of public record," not "disputed facts stated in public records").

### D. <u>Leave to Amend Should Be Granted If Any Deficiency Is Found</u>

If the Court finds any deficiency in the FAC, Plaintiff respectfully requests leave to amend. The Ninth Circuit applies the leave-to-amend standard with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074,

1079 (9th Cir. 1990). That liberality is at its apex with *pro se* litigants, who are entitled to every reasonable opportunity to cure pleading defects. Defendant has not shown—and cannot show—that any deficiency is incurable. Plaintiff submits that no amendment is necessary, but preserves the request in the alternative.

## IV.  CONCLUSION

Defendant's motion is a collection of character attacks, extrinsic exhibits from unrelated lawsuits, and legal arguments that courts in this Circuit have repeatedly rejected. The FAC adequately alleges jurisdiction (sixteen counts at $5,000 = $80,000), Article III standing (completed disclosure of stigmatizing communications despite express rejection of tracking), and every element of a fourth-clause Section 631(a) claim (protected search-term content transmitted in transit to independent third parties without consent). The motion to dismiss should be denied in its entirety, the request for judicial notice should be denied, and the case should proceed.

At bottom, what Defendant asks this Court to do is unusual and impermissible: disregard what the FAC actually says; treat extrinsic complaints as if they were true; apply the jurisdictional arithmetic of a different case (thirteen counts) to this case (sixteen counts); impose a "protectible privacy interest" requirement that Section 631 does not contain; credit a privacy-policy disclosure that was never affirmatively

assented to; disbelieve Plaintiff's allegation that he used the site for a bona fide purpose despite binding Ninth Circuit authority against such credibility determinations; and treat independent multi-client data vendors as if they were passive conduits. None of those moves is sustainable. Applying the ordinary rules of Rules 12(b)(1) and 12(b)(6)—taking the allegations as true, drawing reasonable inferences in Plaintiff's favor, and testing the claim against the text of Section 631(a) rather than against the defendant's prejudice—the FAC states a claim and this Court has jurisdiction over it. The motion should be denied.

DATED: April 20, 2026

Respectfully submitted,

/s/ Vivek Shah
Vivek Shah, Plaintiff *Pro Se*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC

## CERTIFICATE OF COMPLIANCE WITH MEET AND CONFER

I certify that the parties met on April 13, 2026 via Google Meet videoconference. During that discussion, the parties thoroughly discussed each and every issue raised in the motion and attempted in good faith to resolve the motion in whole or in part.

DATED: April 20, 2026

Respectfully submitted,

/s/ Vivek Shah
Vivek Shah, Plaintiff *Pro Se*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1

The undersigned, Plaintiff *pro se*, certifies that this Memorandum of Points and Authorities contains approximately 6,182 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 20, 2026

Respectfully submitted,

/s/ Vivek Shah
Vivek Shah, Plaintiff *Pro Se*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FAC