**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| VIVEK SHAH,<br>　　　　　Plaintiff, | Case No. 2:26-cv-00222-AH(SSCx)<br>Hon. Anne Hwang, District Judge |
| v.<br><br>TALENTBRIDGE, INC.,<br>　　　　　Defendant. | PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11<br><br>Date:  June 10, 2026<br>Time:  1:30 p.m.<br>Ctrm:  9C<br>Case Filed: January 5, 2026 |

## I. INTRODUCTION

Federal court isn't a place for trash talk. Apparently, no one told TalentBridge's lawyers.

Their Motion to Dismiss opens with five separate uses of "extortionist" against a *pro se* plaintiff. Their RJN attaches a 14-year-old criminal affidavit and a supervised-release motion that have nothing to do with whether the website transmits user search queries to third parties. Their tester argument omits two binding Ninth Circuit decisions directly contrary to the position taken. Their amount-in-controversy argument tells the Court the FAC does not identify the number of alleged violations—a representation contradicted by the FAC's own count headings.

None of it is law. All of it is mud. That is exactly what Rule 11(b)(1) was written to stop.

The opposition does not engage that conduct on the merits. It pivots. It tells the Court I missed a meet-and-confer. It tells the Court my safe-harbor service was defective because I did not also serve declarations and a proposed order that did not yet exist. It tells the Court that calling a litigant an extortionist five times is just "truthful background." Then, in two scattered sentences, it asks the Court to impose monetary sanctions on me for filing this motion—without itself making a noticed motion, without a meet-and-confer, without Rule 11(c)(2) safe-harbor service. The hypocrisy is on the face of the papers.

TalentBridge.com had a search bar that transmitted my search queries to third-party trackers without my consent. CIPA is a criminal statute. Cal. Penal Code § 631(a). I filed a civil suit under § 637.2—the precise private remedy the Legislature attached to the criminal statute. That is enforcement. It is not extortion. The defendant's response is not a legal defense to what its website does. It is character assassination of the person who sued it. I am asking the Court to make that stop.

## II. THE PROCEDURAL OBJECTIONS DO NOT HOLD UP
### A. A Rule 11 motion is not the same as an inherent-authority motion.

The opposition treats this Rule 11 motion as if it were a do-over of my earlier Motion for Protective and Corrective Relief Under the Court's Inherent Authority

(Dkt. 17). It isn't. They are different motions with different doctrinal foundations and different procedural tracks. An inherent-authority sanctions motion is an equitable request. A Rule 11 motion runs on Rule 11(c)(2): serve the motion, wait 21 days, file if the offending paper has not been retracted. Rule 11 has no meet-and-confer requirement. It has a safe-harbor requirement. Those are not interchangeable. A meet-and-confer contemplates negotiation; a safe harbor contemplates only an opportunity to retract. Either Rule 11 was violated or it wasn't. Conferring doesn't change that.

**B. The substance was already conferred on March 19, 2026.**

Even if a meet-and-confer were required, it happened. After TalentBridge filed its first Motion to Dismiss (Dkt. 13), counsel and I held a meet-and-confer on March 19, 2026 in connection with my Motion for Protective and Corrective Relief Under the Court's Inherent Authority (Dkt. 17). The categories of conduct discussed on that call are exactly the categories this Rule 11 motion now challenges: the extortion rhetoric, the RJN Exhibits 1 and 2, the tester argument, the jurisdictional argument. I asked counsel to walk it back. Counsel declined. TalentBridge then filed a second Motion to Dismiss (Dkt. 27) that retreated from none of it. Counsel doubled down. In this opposition, counsel triples down. The substance was discussed. The defendant chose to escalate. *See* Concurrently Filed Decl. of Vivek Shah ¶¶ 2–4.

**C. The safe harbor was satisfied.**

Rule 11(c)(2) requires service of "the motion." It does not require service of declarations and a proposed order that do not exist on the day of service. That isn't an interpretation. It's chronology. A declaration averring "I served this motion on April 21, 2026" cannot be drafted, signed, or served on April 21, 2026. A proposed order is a courtesy lodging at filing, not part of the motion itself. The Miller Declaration treats the absence of those documents on the day of service as a fatal defect. It is, instead, a logical impossibility. Counsel is asking that I have served documents that did not yet exist.

The motion served on April 21, 2026 identified the offending portions of the MTD and RJN and the specific Rule 11(b)(1) and (b)(2) grounds. The 21-day clock started that day. It ran out on May 12, 2026. I filed the next day. That is Rule 11(c)(2), in the order it requires. The minor edits noted in counsel's redline—adding the hearing date, formatting—did not expand the substance of the violations charged or add new conduct to the list. Counsel knew exactly what was at issue from April 21 onward. Counsel chose not to retract.

**D. Defendant's own opposition violates the rules it just invoked.**

If procedural compliance is now the standard, the Court should know about counsel's own filings. The same opposition that demands my motion be denied for procedural failure has three failures on its face:

1. Local Rule 11-3.7 requires that quotations of more than one sentence be block-indented. Counsel's opposition contains at least four multi-sentence inline quotations: *MetLife* (p. 11, lines 1–6), *Guillemin* (p. 11, lines 17–23), *NYP Holdings* (p. 12, lines 18–22), and *Rodriguez* (p. 18, lines 12–15). None block-indented.

2. Judge Hwang's Standing Order ¶ E.3(a)–(b) requires the opposing party to lodge a proposed order with its opposition and email a Word copy to AH_chambers@cacd.uscourts.gov. The caption page of the opposition references only the Miller Declaration. No proposed order was lodged. No Word copy was emailed.

3. The opposition asks the Court to impose monetary sanctions on me—at page 10 and again at page 19—without making a noticed motion, without the meet-and-confer videoconference and certification required by L.R. 7-3, L.R. 7-4, and Standing Order ¶ F(2), and without serving its own Rule 11(c)(2) safe-harbor notice. A sanctions request is a sanctions motion. It does not become a non-motion because it is buried inside the body of an opposition brief.

The hypocrisy is the point. Counsel insists my motion fails because it allegedly missed a procedural step Rule 11 does not require, and at the same time embeds in its own filing a request for affirmative sanctions that satisfies none of the

procedural steps the local rules and the Standing Order actually do require. If the Court treats those rules as strict, they apply to the party that invoked them.

**E. Even if I missed Local Rule 7-3, the remedy is not denial.**

The Ninth Circuit has spoken to this directly: "[t]he Central District of California's local rules do not require dismissal of appellee's motions for failure to satisfy the meet-and-confer requirements nor do they even provide for such a harsh penalty." *ECASH Techs., Inc. v. Guagliardo*, 35 F. App'x 498, 500 (9th Cir. 2002). What TalentBridge proposes is the opposite—kill the motion on its face, no merits review, no relief—over a motion the parties cannot agree on anyway, after the opposing party has already declined to retract. That cannot be the law without making Rule 11 unenforceable against well-resourced defendants who simply refuse to engage. In any event, "[p]leadings must be construed so as to do justice." F.R. Civ. P. Rule 8(e).

### III. THE OPPOSITION IS WHY THIS MOTION EXISTS

**A. "Extortion" is rhetoric, not a defense—and I was never convicted of it.**

Let me clear one thing up. I have never been convicted of extortion. I was charged with two counts of attempted extortion under 18 U.S.C. § 1951. Both counts were dismissed. I was convicted only of mailing threatening communications under 18 U.S.C. §§ 875(b) and 876(b). Those are threat-transmission statutes. They punish the sending of a threatening communication. They are not extortion statutes. Federal

extortion requires the obtaining of property through actual or threatened force, violence, or fear. 18 U.S.C. § 1951(b)(2). Mailing a threatening letter does not require obtaining anything. The elements are different. The statute is different. The conviction is different. TalentBridge's counsel knows the difference—counsel quoted from the very documents that lay out exactly that record—and chose to repeat "extortion" and "extortionist" five times in the introduction of the MTD anyway.

This is the point of Rule 11(b)(1). The label is not doing analytical work in a Rule 12 motion. It is not *res judicata*. It is not *collateral estoppel*. It is not statute of limitations. It is not a defense to a CIPA claim. It is a smear. If counsel actually believed—as the opposition writes to this Court—that I am committing the federal crime of extortion through this lawsuit, there are remedies for that, and counsel has used none of them. No FBI complaint. No civil suit against me. No 28 U.S.C. § 1927 motion. No counterclaim. Nothing. The only forum in which TalentBridge has called me an extortionist is the introduction of its motion to dismiss. That is exactly where Rule 11 was designed to look.

What I did fifteen years ago does not enable or disable the code on TalentBridge.com. Whether the website's search bar transmits user queries to third-party trackers in 2026 is a question of what the website does, not who is asking it. A defendant in a CIPA case does not get to litigate a separate criminal case from 2012 *in lieu* of defending the conduct of its website. The Ninth Circuit's law on this is

plain: serial private statutory enforcement is "necessary and desirable," and courts must avoid adverse credibility determinations based on litigation history. *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023); *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008). The MTD omitted both. The repeated invocation of "extortion" is precisely the ad hominem improper purpose *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001), said could be inferred from the face of the filing.

### B. TalentBridge is not a "small business."

The opposition repeats the MTD's characterization that I have "filed a tidal wave of lawsuits using the same CIPA claim in an effort to force small business[es] to pay him settlements." Opp. 13. That is a misrepresentation.

TalentBridge is not a small business. Publicly reported annual revenue is approximately $90 million.[1] Its own LinkedIn page reports a headcount of 1,001–5,000 employees.[2] These are not contested facts. They are publicly available, and judicial notice is appropriate under Fed. R. Evid. 201(b)(2). The Court should take notice of both.

TalentBridge has no standing to advocate for unnamed other "small businesses" it does not represent, and the opposition provides no support whatever

---

[1] TalentBridge Company Profile, Bizjournals, https://www.bizjournals.com/profile/company/org_mv_1386178.

[2] TalentBridge LinkedIn Page, https://www.linkedin.com/company/talentbridge/ (reporting 1,001–5,000 employees).

for the premise that small businesses generally are being targeted by CIPA litigation. A 90-million-dollar staffing company with thousands of employees is not a small business. Counsel had no basis to say it was. That is a Rule 11(b)(3) factual-contention problem stacked on top of the (b)(1) and (b)(2) violations that brought this motion in the first place.

## C. The "tester" / "consent" theory is nonsense.

TalentBridge's theory, distilled, is this: because I have filed other CIPA cases, I cannot have been surprised when this defendant's website intercepted my search terms. That is, the more privacy complaints someone files, the more the person consents to privacy violations. That is not how consent works. CIPA's consent inquiry asks whether a party to the communication agreed to its interception. It does not ask whether the plaintiff, having sued other defendants for the same conduct, should have generally expected the same conduct from this one. If it did, the law would punish vigilance and reward concealment—the more secretive a defendant is about its tracking, the easier to sue; the more outspoken a plaintiff is about challenging it, the harder. California law does not provide that inverted incentive. Consent is lost by agreement. There is no agreement in this record.

The opposition leans on *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1122387 (C.D. Cal. Mar. 14, 2025)—an unpublished district court order—which has since been distinguished, on facts much closer to mine, by *Gabrielli v. Motorola*

*Mobility LLC*, 2025 WL 1939957 (N.D. Cal. July 14, 2025), and *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025). Neither *Gabrielli* decision was cited in the MTD's tester argument. That omission—of two recent on-point district court decisions in this Circuit going the other way—is the duty-of-candor problem.

**D. Russco57 is on appeal, and the FAC pleads sixteen counts.**

The opposition leans heavily on *Shah v. Russco57, LLC*, 2026 WL 71868 (C.D. Cal. Jan. 9, 2026), as if it were settled binding authority. It isn't. *Russco57* is an unpublished slip-copy order from a single district judge, on appeal before the Ninth Circuit, Notice of Appeal filed January 13, 2026. A non-final, non-precedential district court order pending appellate review is not the foundation on which a reasonable attorney would build "well-grounded" status for the same jurisdictional argument. Counsel did not tread with caution. Counsel amplified.

On the substance, the FAC alleges sixteen counts of CIPA violations at ¶¶ 76–84. The opposition's response—that "Counts One Through Sixteen" is a "random phrase in the middle of a page"—is not a serious reading of the document. It is a heading. Sixteen counts at $5,000 each is $80,000. That exceeds the $75,000 diversity threshold. Counsel's representation that "the FAC does not even identify the number of alleged violations" is contradicted by the FAC itself.

**E. The "background" is the foreground.**

A Rule 12 motion stands or falls on the pleadings. 212(b)(1) asks whether the Court has subject-matter jurisdiction. Rule 12(b)(6) asks whether I have stated a claim. Neither inquiry has anything to do with my biography. Yet TalentBridge's MTD opens with pages of "background" about me personally—a 2013 criminal case, my subsequent litigation history, alleged motivations. That material is not background. It is foreground. Strip it out and the rest of the introduction and statement of facts collapses. There is essentially nothing left that addresses jurisdiction or pleading sufficiency. That is why this motion exists. Counsel is litigating this case as a referendum on me rather than on the conduct of its own website. The Federal Rules do not authorize that, and Rule 11 exists to enforce the line.

## IV. A WORD ON DECORUM

I am *pro se*. I am also a party in a federal court of the United States, and I am entitled to be treated as one—not as a defendant in a separate, decade-old criminal matter. If this Court accepts that TalentBridge's counsel can label me an "extortionist" five times on page one of a Rule 12 motion on the theory that the language is "contextual" or "truthful," then I will reluctantly take that as license to write in kind. There is a substantial amount of publicly available material about TalentBridge—its corporate practices, its workforce-related litigation, its data-handling history—that I have declined to put in front of this Court because it has

nothing to do with whether the website's search bar transmitted my queries to third parties. I would prefer to keep it that way. Counsel's conduct is what this Court has identified as a "disturbing trend."[3] I am asking the Court to require the same restraint of the other side. Federal court is not a venue for trash talk. The Court can enforce that or not. If it does, this case becomes about what TalentBridge.com actually does. If it does not, I will defend myself.

## V. CONCLUSION

My motion was served correctly. It was filed correctly. The conduct it identifies is conduct any reasonable attorney would understand is off limits in a CIPA case. I respectfully ask the Court to grant the relief requested in the motion.

DATED: May 21, 2026

Respectfully submitted,

/s/ Vivek Shah
Vivek Shah
1301 N Broadway Ste 32167
Los Angeles, CA 90012
newvivekshah@gmail.com
(224) 246-2874

---

[3] U.S. Dist. Ct. C.D. Cal., Civility and Professionalism Guidelines, https://www.cacd.uscourts.gov/attorneys/admissions/civility-and-professionalism-guidelines (last visited May 21, 2026).